Argued and submitted January 21, plaintiff remanded to custody of defendant January 27, reconsideration denied February 3, 1987

In the Matter of the Application of
Richard Troy Gillmore for
a Writ of Habeas Corpus.

RICHARD TROY GILLMORE,
*Plaintiff,*

*v.*

PEARCE,
*Defendant.*

(S33603)

731 P2d 1039

Wayne Mackeson, Portland, argued the cause and filed petition for plaintiff. With him on the petition were Des Connall & Dan Lorenz, P.C., Portland.

Thomas H. Denney, Salem, argued the cause and filed response on behalf of defendant. With him on the response were Dave Frohnmayer, Attorney General and Virginia L. Linder, Solicitor General, Salem.

GILLETTE, J.

## GILLETTE, J.

This is a habeas corpus case. On January 13, 1987, plaintiff, an inmate in the Multnomah County Detention Center, filed a habeas corpus petition in this court pursuant to Article VII (Amended), section 2, of the Oregon Constitution. Plaintiff is in the custody of defendant, the Sheriff of Multnomah County. This court ordered that the writ issue; pursuant thereto, defendant filed his return. At a hearing on January 21, 1987, this court inquired into the circumstances of plaintiff's imprisonment. ORS 34.580. Plaintiff contends that the security amount set for his release on pending criminal charges is excessive in violation of his rights under ORS 135.230 - 135.295, Article I, sections 14 and 16 of the Oregon Constitution and amendments VII and XIV to the Constitution of the United States. We conclude that the security amount in question is not excessive as a matter of law.

The Oregon Constitution guarantees that "[o]ffenses, except murder, and treason, shall be bailable by sufficient sureties." Or Const, Art I, § 14. The Constitution further provides that, "[e]xcessive bail shall not be required." Or Const, Art I, § 16.

ORS 135.245 provides, in pertinent part that, except when charged with murder or treason,

"(1) * * * a person in custody shall have the immediate right to security release or shall be taken before a magistrate without undue delay. * * *

"* * * * *

"(3) The magistrate shall impose the least onerous condition reasonably likely to assure the person's later appearance. A person in custody, otherwise having a right to release, shall be released upon the personal recognizance unless release criteria show to the satisfaction of the magistrate that such a release is unwarranted.

"(4) Upon a finding that release of the person on personal recognizance is unwarranted, the magistrate shall impose either conditional release or security release."

ORS 135.230(6) sets forth the release criteria:

" 'Release criteria' includes the following:

"(a) The defendant's employment status and history and financial condition;

"(b) The nature and extent of the family relationships of the defendant;

"(c) The past and present residences of the defendant;

"(d) Names of persons who agree to assist the defendant in attending court at the proper time;

"(e) The nature of the current charge;

"(f) The defendant's prior criminal record, if any, and, if the defendant previously has been released pending trial, whether the defendant appeared as required;

"(g) Any facts indicating the possibility of violations of law if the defendant is released without regulations;

"(h) Any facts tending to indicate that the defendant has strong ties to the community; and

"(i) Any other facts tending to indicate the defendant is likely to appear."

In the present case, plaintiff was arrested on December 19, 1986, and charged with one count each of burglary in the first degree (ORS 164.225(1)) and rape in the first degree (ORS 163.375(2)). On the following day, plaintiff completed and signed a document entitled "Motion for Recog /Bail Reduction." That document reflects that the figure $20,000 was initially written in, in a section denoted "Bail $," with respect to the security amount to be required for each offense. The $20,000 figures were crossed out and replaced with the figures "$100,000."

On December 22, 1986, plaintiff was charged by a district attorney's information in Multnomah County District Court with burglary in the first degree and, "as part of the same act and transaction," with rape in the first degree. The information designated the security amount to be posted as "$100,000 + $100,000." On December 23, 1986, plaintiff filed a "Motion for Evidentiary Bail Hearing" and requested release pending further proceedings in circuit court. The next day, while his motion for a hearing was still pending, plaintiff was indicted by the Multnomah County Grand Jury and charged with burglary in the first degree, rape in the first degree, and two counts of sexual abuse in the first degree (ORS 163.425), all the crimes alleged to have been "part of the same acts and transactions." The indictment designated as "security amount" the amount of "$100,000 + $1,500 +

$1,500 + $100,000." Plaintiff is presently incarcerated awaiting trial on this indictment.

On December 24, 1986, plaintiff was arraigned on the indictment and a security release hearing was held before a Multnomah County Circuit Court Judge. Information provided at the hearing by the deputy district attorney revealed that plaintiff had confessed to seeing a 13-year-old girl in her home while he was out jogging, breaking into her home and sexually assaulting her on impulse. Plaintiff also confessed to seven previously unsolved burglary-rapes committed in the Portland area between 1978 and 1981. His confession contained details of those offenses which were not matters of public knowledge. Three of the victims identified plaintiff in photograph "throw-downs," and his fingerprints were found at the scene of one of the offenses.

It was also pointed out at the hearing that plaintiff was interviewed shortly after his initial arrest by a recognizance officer who recommended to the court that release on his own recognizance be denied, noting on the form "Recog Be Denied — Nature of Chgs." The trial judge further reported that:

> "Close Street Supervision has interviewed him and made an investigation. They absolutely deny that they would take this man. They have rejected this man out of hand * * * they have no room for him, but they wouldn't take him even if they did have room for him."

Finally, the deputy district attorney represented in the trial court that "information from the jail is that if [plaintiff] was released * * * he would want to leave the area."

Plaintiff is 27 years old. Although married, he and his wife are apparently about to dissolve their marriage. His mother and father are divorced. His father lives in Troutdale. His mother works in Atlanta, Georgia, and returns to Oregon "about twice a month." The former family home is presently occupied by plaintiff's brother and sister, both of whom work during the day and, presumably, are therefore unable to supervise him during that time.

At the conclusion of the bail hearing, the judge apparently was not impressed with plaintiff's evidence and, after

considering the entire presentation by the state and plaintiff, concluded:

> "[N]o recognizance will be allowed. The Court will order bail to remain constant to reasonably insure and compel [plaintiff] to appear in light of the gravity and nature of the charges in this indictment where the lure of freedom might well be too great a temptation, in light of the circumstances and [plaintiff's] personal circumstances, to impel him to flee."

Plaintiff argues that leaving the security amount at such a high figure constitutes preventive detention, a concept not included in the Oregon security release scheme. As this court explained in *Sexson v. Merten,* 291 Or 441, 448, 631 P2d 1367 (1981):

> "The only indication that Oregon's statutory scheme authorizes conditions on a defendant's release for protection of society is found in ORS 135.230(6)(g):
>
> " ' "Release Criteria" includes the following:
>
> " 'Any facts indicating the possibility of violations of the law if the defendant is released without regulations.'
>
> "This provision may provide guidance to trial judges in determining whether a defendant is to be released upon: (a) 'personal recognizance,' (b) 'conditional release,' or (c) 'security release.' This provision does not, however, authorize a trial judge who chooses to release a defendant under a 'security release agreement' to impose any conditions other than those which reasonably relate to providing assurance that the defendant will appear at trial."

We think it is clear from the foregoing statement in *Sexson* that the likelihood that a particular accused person will commit further crimes if released is relevant to the decision to release the person on recognizance or conditional release. However, this criterion from ORS 135.230(6)(g) plays no role in setting the *amount* required for security release. Security amounts as a whole (not the ten per cent actually deposited, *see Liberman v. Burks,* 293 Or 457, 463-464 n 6, 650 P2d 83 (1982)) are supposed to represent the least onerous amount whose possibility of loss reasonably assures the attendance at trial of the person charged. The likelihood that the charged person will or will not commit other offenses while released contributes nothing to the calculation of that monetary amount. Preventive detention, in other words, is not authorized by the Oregon statutory scheme.

The unavailability in Oregon of preventive detention notwithstanding, however, one can understand why, in view of the arguments made by the deputy district attorney at the hearing, plaintiff is concerned that his security amount was set with preventive detention in mind. The deputy district attorney said, in his opening argument,

> "What makes this case particularly [egregious] is that the [plaintiff] has confessed to seven other Burglary - Rapes that he committed during a period of time between 1978 and 1981. * * *

> "[The officers who took plaintiff's confession] would tell you that the [plaintiff's] confession on December 5, 1986, indicated that while he was jogging through the neighborhood in which the victim was living, he spied her and upon impulse broke into her house and raped her.

> "The State would therefore request that bail be retained because with this pattern of activity, where he's been a serial rapist in the past and he acted again on impulse, indicates that it would be a tremendous risk to the community to release him.

> "* * * * *

> "The main thrust of my argument in that he is a serious danger to the community, and a danger to himself, and there's a potential that he would leave if released. * * *"

Again, in his closing argument, the deputy district attorney struck the same theme:

> "The position of the State is clear in terms of the proof in this case that can be produced and witnesses are here in court. The [plaintiff's] prior history, the danger to the community is as great in this case as it could be in any case because of the repeated nature of these violent and threatening crimes to the women in our community."

If the only issue at a hearing were the *amount* of security deposit to be required — as opposed to the question of whether it, rather than recognizance or conditional release, is the appropriate release option — these arguments by the deputy district attorney referring to the risk to the community would be improper. A deputy district attorney should not make such arguments, and a trial judge should stop him from making them. The fact that the arguments were made, and listened to, causes plaintiff to infer that preventive detention

was playing a role in the trial court's decision concerning the release amount.

The inference is sufficiently plausible to have led us to grant the extraordinary writ of *habeas corpus* in order to examine it. We state the principle once more, to assure clarity: while the possibility that a person charged may commit other criminal offenses if released may be considered in determining whether the person should be released on his personal recognizance or be subjected to conditional release, the release amount chosen is not to be based upon the same criterion. The sole criterion to be considered in establishing the amount of security is the reasonable assurance of appearance by defendant for trial. But on the record before us, the circuit judge could consider the argument to relate to a different issue of recognizance or conditional release. Plaintiff was not merely seeking to have a security amount set, he was also arguing for release on recognizance or conditional release. The deputy district attorney's remarks were therefore pertinent under ORS 135.230(6)(g) and *Sexson v. Merten, supra.*

■ We also conclude that the judge decided the case upon the appropriate legal criteria and that a sufficient showing was made to justify the security amount that was actually set. Under the statutory scheme, the first decision for the judge to make was whether to release plaintiff on his own recognizance. Although plaintiff provided testimony from his father, mother, brother and a friend to the effect that he could be expected to remain in the area and appear for trial, we believe the judge was entitled to conclude that plaintiff's connections with the community, while significant, were not enough by themselves to assure his appearance at trial.

Although married, plaintiff and his wife are apparently about to divorce. Plaintiff's mother and father are divorced. The former family home is presently occupied by plaintiff's brother and sister, both of whom work during the day and, presumably are unable to supervise him during that time. The charges against plaintiff are severe and, in light of his confessing to previous criminal activity of the same type as the present charges, certainly carry with them the likelihood of a significant jail term if he is convicted. The trial judge was justified in concluding that release on recognizance was not appropriate.

For similar reasons, we think the decision not to release plaintiff conditionally was justified. The only institutional release supervision available — an operation called "Close Street Supervision" — was not available to the court, and his family and friends did not appear to be in a position to supervise him to a degree that the court might find necessary under the circumstances. We conclude, therefore, that the trial judge was justified in deciding that some amount of security needed to be posted before plaintiff could be released.

■    This court has stated on many occasions that the total amount of security to be posted must be no more than is necessary to reasonably assure the attendance of the person charged at trial. *See, e.g., Cooper v. Burks,* 299 Or 449, 702 P2d 1107 (1985); *State ex rel Lowrey v. Merryman,* 296 Or 254, 674 P2d 1173 (1984); *Sexson v. Merten, supra; Owens v. Duryee,* 285 Or 75, 589 P2d 1115 (1979). It is not to be set so as to make it impossible, as a practical matter, for a prisoner to secure release. *State ex rel Lowrey v. Merryman, supra,* 296 Or at 258; *Owens v. Duryee, supra,* 285 Or at 80.

■    At the same time, the judge must — if he is to make an informed decision — take into consideration such matters as the nature of the defendant, the nature of the offense and the possible penalties which could be imposed if the defendant were convicted. *See Cooper v. Burks, supra; see also Owens v. Duryee, supra.*

■    Applying those considerations to the present case, this record shows that plaintiff has confessed to committing a very serious set of crimes on a completely impulsive basis, which acts are consistent with prior serious compulsive behavior of the same kind. Plaintiff's marriage has disintegrated, eliminating his strongest tie to the community. A trial judge is entitled to find these circumstances of considerable concern in deciding whether defendant will appear.

With respect to the charges themselves, they are serious — two class A felonies involving the entry into a home and the forceable assault of a 13 year old victim. On the other hand, when viewed in isolation, there is nothing about them that is so remarkable as to suggest that, in isolation, a security amount as great as that imposed here would be necessary.

The potential consequences of conviction, however,

will substantially up the ante. Because of his confession to seven prior acts similar to the crimes for which he is charged, this plaintiff faces, not just the 20 year maximum available for a class A felony, but possibly an even greater period of 30 years incarceration as a dangerous offender, ORS 161.725(1), without parole. See *State v. Huntley,* 302 Or 418, 730 P2d 1234 (1986). With both of these sentence-enhancing circumstances in the offing, a trial judge would be entitled to conclude that a criminal defendant faced with such possibilities would be under enormous pressure to flee and, therefore, a significant security amount needed to be set.

It is clear from his closing comments that the judge considered only the likelihood plaintiff would appear for trial. He referred to an amount that would "reasonably insure and compel this [plaintiff] to appear" and the concern that the charges might make "the lure of freedom * * * too great a temptation." The judge made no mention of any motive to protect any other interest. *Compare State ex rel Lowrey v. Merryman, supra.* The setting of the security amount was not, on this record, impermissibly motivated.

Subject to the restraints already adverted to, the establishment of a particular amount for security release lies within the discretion of the trial judge. *Cooper v. Burks, supra,* 299 Or at 452; *State v. Keller,* 240 Or 442, 452, 402 P2d 521 (1965). While the amount imposed in this case is on the high side and, indeed, may be higher than any judge of this court would have set under the same circumstances, we cannot say as a matter of law that it is so high as to be impermissible. *Compare Liberman v. Burks, supra.*

For the foregoing reasons, we conclude that the security amount set in this case was not legally impermissible. Plaintiff is therefore remanded to the custody of the defendant.