Argued and submitted May 28, writ discharged October 22, 1992

ROGER KARL PRIEST,
*Plaintiff,*

*v.*

Fred PEARCE,
Director of Department of Corrections,
*Defendant.*

(SC S39032)

840 P2d 65

John Henry Hingson III, Oregon City, argued the cause and filed the petition for plaintiff.

Janet A. Metcalf, Assistant Attorney General, Salem, argued the cause and filed the memoranda for defendant. With her on the memoranda were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

GILLETTE, J.

Fadeley, J., concurred and filed an opinion.

## GILLETTE, J.

In this original *habeas corpus* proceeding, we are called upon to decide whether the right to suitable bail guaranteed by Article I, section 14, of the Oregon Constitution, set out *post*, is available to a convicted criminal defendant during the pendency of his or her appeal. We hold that the scope of Article I, section 14, does not extend to appeals.

Plaintiff, who is the defendant in an underlying criminal case, pleaded guilty on October 17, 1991, to charges of second and fourth degree assault. By a judgment entered on January 15, 1992, he was sentenced to 20 months in jail. Plaintiff had been released on bail pending trial;[1] he sought release pending resolution of his appeal. The trial court denied bail. Plaintiff then filed with this court petitions for a writ of mandamus and a writ of *habeas corpus*, both aimed at requiring either the trial court or the Court of Appeals to admit plaintiff to bail. We denied his petition for a writ of mandamus, but issued a writ of *habeas corpus*, in order to address the important and unresolved question of constitutional law presented by this case.

Article I, section 14, of the Oregon Constitution, provides:

> "Offences [*sic*], except murder, and treason, shall be bailable by sufficient sureties. Murder or treason, shall not be bailable, when the proof is evident, or the presumption strong."

Plaintiff's argument is simple: Because he "has been found guilty of offenses that are neither treason nor murder in any degree," he is "entitled to bail as a matter of right under [Article I, section 14]," during the pendency of his appeal. He does not assert that his release must be on his own recognizance; neither does he deny that any release may be conditioned on a wide variety of circumstances. The

---

[1] We refer to "bail," because that is the term used in Oregon Constitution, Article I, section 14 — the constitutional provision under scrutiny in this proceeding. By the term, "bail," we refer to an amount of money or other thing of value that is pledged by one accused of a crime, or by others on behalf of the accused, and that is intended to ensure the attendance of the accused at all appropriate times during the criminal proceeding. That which traditionally was referred to as "bail" has been replaced in name, but not in basic concept, by what presently is referred to statutorily as a "security amount," ORS 135.265.

amount of bail and any conditions that a releasing court might wish to impose as a condition of release are, plaintiff recognizes, matters for the releasing court to consider in its discretion. But plaintiff does assert that he is entitled to have that discretion exercised and to have *some* level of bail set.

## SUB-CONSTITUTIONAL ANALYSIS

As is customary under our methodology, we begin with the pertinent sub-constitutional law. *See, e.g., State v. Moylett*, 313 Or 540, 545-46, 836 P2d 1329 (1992) (even where a party's claim of right is based on a constitutional provision, court should first determine whether party's claim may be satisfied by statute). ORS 135.285(2) provides:

> "After judgment of conviction in municipal, justice or district court, the court shall order the original release agreement, and if applicable, the security, to stand pending appeal, *or deny*, increase or reduce the release agreement and the security. *If a defendant appeals after judgment of conviction in circuit court for any crime other than murder or treason, release shall be discretionary.*"

(Emphasis added.) Clearly, the emphasized portion of the statute establishes that there is no absolute *statutory* right to release on bail pending appeal: If the trial court is given the right "to deny * * * the release agreement and the security," and if an affirmative decision to "release" is "discretionary," it follows ineluctably that a decision *not* to release the convicted person lies within the range of discretion granted by the statute.

If the foregoing were subject to dispute as a matter of interpreting English, the legislative history of ORS 135.285(2) removes any residual doubt as to the statute's meaning. First enacted in 1971 as part of a revision of the criminal procedure code relating to appeals, the statute was reenacted two years later as part of the comprehensive revision of Oregon's criminal procedure law. Before it was changed to essentially its present form in 1971, ORS 140.030 (1969) provided:

"If the charge is for any other crime than those mentioned in ORS 140.020 [which is not pertinent to this case], the defendant, before conviction, or after judgment of conviction, if he has appealed, is entitled to be admitted to bail as a matter of right."

ORS 140.030 (1969) thus made bail pending appeal, except in cases involving murder or treason, a matter of *right*. *See Hanson v. Gladden*, 246 Or 494, 426 P2d 465 (1967); *Delaney v. Shobe*, 218 Or 626, 346 P2d 126 (1959) (recognizing rule). The intent of the committee that drafted the 1972 Oregon Criminal Procedure Code was to change that rule:

"Subsection (2) [of what eventually became ORS 135.285] changes the current law of *[former]* ORS 140.030 from the right of the defendant to release upon appeal to release upon appeal subject to the discretion of the court. * * * If the defendant appeals from his conviction in circuit court, the court may grant release subject to its discretion."

Proposed Oregon Criminal Procedure Code 147, § 247, Commentary (1972). *See also Owens v. Duryee*, 285 Or 75, 589 P2d 1115 (1979) (*dictum* indicating that release after judgment of guilt is discretionary under ORS 135.285(2)).

We find it to be clear from the foregoing discussion that plaintiff has no statutory right to the relief that he seeks. Therefore, the constitutional question that he raises is squarely presented. We turn now to that issue.[2]

## CONSTITUTIONAL ANALYSIS

In support of his position, plaintiff relies primarily on the statement in Article I, section 14, of the Oregon Constitution, that "[o]ffences [*sic*], except murder, and treason, *shall* be bailable by sufficient sureties." (Emphasis added.) There are three levels on which that constitutional provision must be addressed: Its specific

---

[2] When we issued our writ in this case, we directed the parties to submit memoranda to us "addressing the historical origins, including federal constitutional provisions, of Article I, section 14, of the Oregon Constitution, specifically with reference to whether Article I, section 14, applies to release after conviction [and] pending appeal." We wish to note that counsel complied with our request in a particularly comprehensive and helpful fashion. Much of what follows is derived directly from the materials presented to us by the parties' memoranda.

wording, the case law surrounding it, and the historical circumstances that led to its creation. We shall address those topics in the order in which they are listed.

1. *Text and Context*

The particular words on which plaintiff relies do not, in our judgment, support his theory, as soon as those words are seen in the larger context of the constitutional provision as a whole: "[Offenses] * * * shall be bailable by sufficient sureties. Murder or treason, shall not be bailable, *when the proof is evident, or the presumption strong.*" (Emphasis added.)

It is clear, by that wording, that at least the second sentence of Article I, section 14, can apply only to those charged with, *but not yet convicted of*, the offenses of murder or treason. The second sentence of the constitutional provision becomes meaningless if it is intended to apply after a conviction is obtained and an appeal is brought: When a court or jury has found guilt beyond a reasonable doubt, proof hardly can be said to be *other than* "evident"; the presumption of guilt hardly can be said to be *other than* "strong."

It would be anomalous to treat the first sentence of the constitutional provision as applying even after conviction and on appeal, while the second sentence would apply only before conviction, when there is not a single word in the constitutional provision itself to suggest that the two sentences differ in their coverage. The logical course is to give a parallel construction to both sentences of the same provision. This means that both sentences speak only to the circumstances of those charged with, but not yet convicted of, offenses. The question of post-conviction bail is left to legislative grace, not constitutional mandate.

Logic outside the wording of the provision also supports this construction. One charged with an offense is presumed innocent. One convicted of an offense has lost the benefit of that presumption and, as this court recently put it, may be under "enormous pressure to flee." *Gillmore v. Pearce*, 302 Or 572, 581, 731 P2d 1039 (1987). It makes sense that Oregon's founders would provide within the

constitution for bail for one charged with an offense, but omit any such consideration for one already convicted.

### 2. *Case Law*

This court's case law under Article I, section 14, is somewhat inconsistent on this issue. Some earlier cases appear to assume that bail on appeal is a matter of constitutional right, but no case actually required the Supreme Court to address the point. *See, e.g., Hanson v. Gladden, supra,* 246 Or at 495 (stating that, under Article I, section 14, and ORS 140.030 (1969), "the defendant in a criminal case who appeals from a conviction is entitled to be admitted to bail"); *Mozorosky v. Hurlburt,* 106 Or 274, 278, 198 P 556, 211 P 893 (1923) (same). However, later decisions of this court appear to assume that the constitutional provision is concerned solely with release before conviction of an offense; but, again, no case that we have found specifically and authoritatively decides the question. *See, e.g., State v. Pinnell,* 311 Or 98, 116, 806 P2d 110 (1991) ("When a defendant is charged with murder, his right to release on security *pending trial* will be denied if the state establishes at a security release hearing by 'clear and convincing evidence' that the likelihood of the defendant's guilt is strong") (emphasis added); *State v. Douglas,* 310 Or 438, 445, 800 P2d 288 (1990) (same); *Gillmore v. Pearce, supra* (same).

### 3. *History*

The concept of a *right* to bail, as set forth in Article I, section 14, and in similar provisions in the constitutions of other states, was foreign to the English court system, just as it is foreign to the system of bail in the federal judicial system under the Eighth Amendment. *United States v. Edwards,* 430 A2d 1321, 1325-29 (DC 1981), *cert den* 455 US 1022 (1982).

> "The earliest colonial provision concerning bail is found in section eighteen of the Massachusetts Body of Liberties of 1641. This enactment deviated sharply from the English tradition by granting an affirmative, though limited, right to bail. Excluded were capital crimes, contempts of court, and other cases to be expressly designated by the legislature."

*Id.* at 1327 (footnote omitted). The Massachusetts provision served as a model for the Pennsylvania Charter of Liberty (1682) which, in turn, was later adopted by the new states of Pennsylvania and North Carolina in 1776 and (still later) was widely copied in state constitutions enacted in the 19th century, among them Oregon's. *Id.* at 1327-28. *See also* Foote, *The Coming Constitutional Crisis in Bail: I*, 113 U Pa L Rev 965, 975 (1965) (noting the lack of precedent in English law).

The revolutionary nature of the concept of a right to bail, first recognized in Massachusetts in 1641 and adopted by the people of this state when they adopted Article I, section 14, in 1857, says nothing about the *scope* of the right. Was that right intended to apply only to the criminally *accused*, or was it also intended to apply to the criminally *convicted*? We focus now on that more specific issue.

As is true of so many other sections of the Oregon Constitution, Article I, section 14, is based on an essentially identical provision of the 1851 Indiana Constitution. *State ex rel Connall v. Roth*, 258 Or 428, 431, 482 P2d 740 (1971); Palmer, *The Sources of the Oregon Constitution*, 5 Or L Rev 200, 201 (1925); Carey, The Oregon Constitution and Proceedings and Debates of the Constitutional Convention of 1857, 468 (1926).[3] Just what the Oregon constitutional convention believed that the provision meant is unknown. We have found no Indiana decision antedating Oregon's adoption of the Indiana provision that would have informed the judgment of the convention in that regard. Indiana court decisions since Oregon statehood uniformly hold that bail on appeal is not governed by Article I, section 17, of the Indiana Constitution,[4] but decisions made after Oregon's statehood

---

[3] Article I, section 14, of the Oregon Constitution is virtually identical to Article I, section 17, of the Indiana Constitution. The Indiana provision begins: "Offenses, other than murder and treason * * *." *Burns Ind Stat Anno (Const)*. The Oregon provision, after misspelling "offenses," substitutes "except murder, and treason" for the words, "other than murder or treason." Beyond those minor differences, the two provisions are the same. More than 30 other states have similar provisions. *United States v. Edwards*, 430 A2d 1321, 1328 n 14 (DC 1981) (indicating that 36 states have similar provisions), *cert den* 455 US 1022 (1982); Duker, *The Right to Bail: A Historical Inquiry*, 42 Alb L Rev 33, 93-94 n 373 (1977) (listing 38 states).

[4] *See, e.g., Tyson v. State*, 593 NE2d 175, 177 n 1 (Ind 1992) (so holding); *Atkins v. State*, 550 NE2d 342 (Ind Ct App 1990) (same).

do not establish the meaning of the earlier-adopted language in the Oregon Constitution. *See State v. Soriano*, 68 Or App 642, 649 n 8, 684 P2d 1220, *aff'd, opinion adopted* 298 Or 392, 693 P2d 26 (1984) (1860 Indiana decision not given "any special weight in construing" an Oregon constitutional provision that had been adopted from a similar Indiana provision, because the court decision came after the Oregon provision had been adopted).

Although neither Oregon nor Indiana precedent is decisive, we note that, of all the states that presently have provisions like Article I, section 14, only one — Louisiana — has ever held that its constitutional provisions concerning bail apply to criminal appeals. (Even that supposedly contrary decision from Louisiana, *New Orleans v. Lacoste*, 169 La 717, 125 So 865 (1930), appears to have been based on a peculiar and additional provision in the Louisiana Constitution expressly providing for post-conviction bail.) So far as we have been able to determine, all the other states that have considered the issue have concluded that their constitutional provisions applied only to proceedings before conviction. *See generally State v. Wassillie*, 606 P2d 1279, 1282 (Alaska 1980) (citing relevant authorities); *State v. Flowers*, 330 A2d 146, 147-48 (Del Supr 1974) (same). Thus, neither the specific history of the Oregon constitutional provision nor the more general history of the parallel provisions found in many other state constitutions supports plaintiff's position here.

## CONCLUSION

We hold that Article I, section 14, applies only to those accused (but not yet convicted) of offenses. Article I, section 14, of the Oregon Constitution, does not aid plaintiff. Plaintiff does not have any legal right to release on bail pending appeal from his convictions. It follows that the writ of *habeas corpus* heretofore issued should be discharged.

Writ discharged.

**FADELEY, J.,** concurring.

Mr. Priest stands convicted, by his own plea of guilty, of two assault crimes. A sentence of incarceration has been imposed. Before the conviction, he was released "on bail." He seeks release from custody while his appeal of the judgment

entered on those convictions is pending. I concur in the opinion of the court that release pending a criminal defendant's appeal is not constitutionally guaranteed.[1] I write separately to discuss and apply an aspect of constitutional interpretation that I find most persuasive in this case.

Where a constitutional provision mandates protection of individuals against arbitrary governmental power, it is in order to examine the historical evil that created society's demand for that protection. Establishing the nature of that evil, then and now, elucidates the scope of the protection afforded by a constitutional provision originally designed to overcome it.

Bail, as an alternative to jail, was a legal concept well known in early England. However, when the government of a seventeenth century king refused to honor that concept, parliament asserted it as an inviolable right, related to Magna Carta, in its Petition of Right of 1628, addressed to that king. The wording of that assertion assumes that the right applies to one held absent a conviction of crime. The Petition of Right complained to the king that freemen had "been imprisoned, without any cause shewed * * * without being charged with anything to which they might make answer according to law." 1 Schwartz, The Bill of Rights 17, 20 (1971). The king seemed to acquiesce to the demands in the Petition but then sent parliament home, prevented its meeting again for 11 years, and continued to insist that unconvicted persons be held without bail. 6 Holdworth's History of English Law 106 (1924); 5 Encyclopedia Britannica 306 (1971).

In 1635, the Massachusetts General Court (*i.e.* the legislature of that colony) established a committee to write fundamental laws to limit a magistrate "in resemblance to a Magna Carta." The Massachusetts Body of Liberties, drafted pursuant to that charge, was adopted in 1641. Swindler, et al, Bibliography, Sources and Documents of U.S. Constitution, at Chronology, 1-2 second series (1982).

---

[1] The Oregon Constitution, Article I, section 14, provides:

"Offences (sic), except murder, and treason, shall be bailable by sufficient sureties. Murder or treason, shall not be bailable, when the proof is evident, or the presumption strong."

While the concerns of the Massachusetts colonial legislators are not self-evident, the Petition of Right and its aftermath were provoked in part by the king imprisoning persons, without charges, in an effort to force payment of "taxes" that parliament had refused to approve and levy. It was in that setting that the king would not and parliament could not provide an effective remedy for coercive incarceration before trial. If the Massachusetts Body of Liberties was adopted with knowledge of events in England, as seems inevitably to be the case, its bail provisions were addressed to remedying incarceration that occurred before trial and without presentment of formal, distinct charges.[2]

Roughly 100 years later, Blackstone continued recognition of the same distinction — that bail applied before conviction rather than after sentence imposed. He used the following words:

"Let us next see, who may *not* be admitted to bail, or, what offences (sic) are *not* bailable. And here I shall not consider any one of those cases in which bail is ousted by statute, from prisoners *convicted* of particular offences: for then such imprisonment without bail is part of their sentence and punishment. But, where the imprisonment is only for safe custody *before* the conviction, and not for punishment *afterwards*, in such cases bail is ousted or taken away, wherever the offence is of a very enormous nature: for then the public is entitled to demand nothing less than the highest security that can be given, *viz.* the body of the accused; in order to ensure that justice shall be done upon him, if guilty. Such persons therefore, as the author of the mirror observes, have no other sureties but the four walls of the prison. By the ancient common law, before and since the conquest, all felonies were bailable, till murder was excepted by statute: so that persons might be admitted to bail before conviction

---

[2] Regarding bail, the 1641 Massachusetts Body of Liberties provided that:

"No mans person shall be restrained or imprisoned by any authority whatsoever, *before the law hath sentenced him thereto*, if he can put in sufficient securitie, bayle or mainprise, for his appearance, and good behavior in the meane time, unlesse it be Crimes Capitall, and Contempts in open Court, and in such cases where some expresse act of Court [*i.e.* legislature] doth allow it." Swindler, Sources and Documents of U. S. Constitution, Vol 5, 49 (1975). (Emphasis added.)

almost in every case." (Emphasis in Original.) (Footnotes omitted.) 4 Blackstone, Commentaries, 298.[3]

That distinction is also found in Justice Marshall's discussion, while acting as a federal circuit judge, in *United States v. Feely*, 25 F Cas 1055, 1057 (CCD Va 1813) (Bail is "to combine the administration of criminal justice with the convenience of a person accused, but not proved to be guilty."). In *Ex parte Milburn*, 34 US (9 Pet) 704, 710, 9 L Ed 280, 282 (1835), the same distinction is assumed. The Supreme Court of the United States referred to the office of bail in a criminal case as "taken to secure the due attendance of the party accused, to answer the indictment, and to submit to a trial, and the judgment of the court thereon."[4]

Apparently, avoiding the evil against which Oregon's Constitutional protection was directed, as perceived by an early Oregon legislature, did not absolutely require bail on appeal. Oregon Laws of 1864, Code of Criminal Procedure, as reported in Deady, General Laws of Oregon, 1845-1864, at page 484, provided:

"Sec. 257. If the charge be for any other crime than those mentioned in the last section, the defendant, *before conviction*, is entitled to be admitted to bail, as a matter of right.

---

[3] As the last sentence of this excerpt from Blackstone demonstrates, the implication in *United States v. Edwards*, 430 A2d 1321 (DC App 1981), *cert den* 455 US 1022 (1982), that the English *tradition* included no right to bail is exaggerated.

[4] The federal constitution, by its Bill of Rights, only guaranteed that courts would not impose excessive bail. Mandating bail as a right of persons accused was left to state constitutions, which, as the court's opinion herein notes, very generally included some guarantee of the right to bail and not simply prohibitions against excessive amounts of bail. The excessive bail prohibition derives from a different evil, one that persisted after bail was again being allowed.

The *Preamble* to the English Bill of Rights of 1689 stated, as an accusation against the former king, that:

"[A]nd excessive bail hath been required of persons committed in criminal cases, to elude the benefit of the laws made for the liberty of the subjects."

Its *text* provided:

"[E]xcessive bail ought not to be required."

Some present state constitutions contain both a general right to bail and restrictions against setting an excessive amount, separately stated. *E.g.*, Tenn Const, Art I, §§ 15, 16; Or Const, Art I, §§ 14, 16. Obviously the right to bail and prohibition of excessive bail are treated as two separate subjects.

"Sec. 258.   After judgment of conviction of a crime other than those mentioned in section 256, a defendant who has appealed, and *when there is a stay of proceedings and not otherwise, may be admitted to bail* as a matter of right; and as a matter of discretion, a defendant may be admitted to bail for his appearance from day to day before the magistrate, on the examination of the charge, before being held to answer, or discharged." (Emphasis added.)

That statutory enactment continued the distinction found in the historical documents — that bail of right only applied to a defendant accused, and before conviction. It reflects a practical construction of the constitution "familiar to the time of the adoption of the constitution," *Knutson v. Cupp*, 287 Or 489, 492, 601 P2d 129 (1979).

The Oregon Constitution, Article I, section 14, does not mandate bail on appeal of a criminal conviction.