On petitioner's petition for reconsideration of order denying motion to waive the filing fee filed May 7, petition for reconsideration granted; order adhered to on reconsideration November 6, 2002

Bruce ALLEN,
*Petitioner,*

*v.*

EMPLOYMENT DEPARTMENT
and Eagle Newspapers, Inc.
dba The Dalles Chronicle,
*Respondents.*

02-AB-0289; A117808

57 P3d 903

Bruce Allen, *pro se*, for petition.

Before Brewer, Presiding Judge, and Wollheim and Kistler, Judges.

BREWER, P. J.

## BREWER, P. J.

Petitioner contends that the fee required by ORS 21.010 for filing a petition for judicial review in this court violates Article I, section 10, of the Oregon Constitution, which requires that "justice shall be administered, openly and without purchase * * *." We initially denied, by unpublished order, petitioner's request to waive the filing fee. Petitioner has petitioned for reconsideration of that decision. We grant petitioner's petition for reconsideration and, on reconsideration, conclude that the uniform filing fee prescribed by ORS 21.010 does not violate the Justice Without Purchase Clause of Article I, section 10, and adhere to our order denying petitioner's request to waive the filing fee.

Petitioner filed a petition for judicial review by this court of an order of the Employment Appeals Board and, at the same time, petitioned for a waiver of the appellate filing fee required by ORS 21.010(1). That statute, subject to an exception not applicable here, provides, in part:

> "[T]he appellant in an appeal or the petitioner in a judicial review in the Supreme Court or the Court of Appeals shall pay a filing fee of $140 in the manner prescribed by ORS 19.265. The respondent in such case, upon entering first appearance or filing first brief in the court, shall pay to the State Court Administrator the sum of $84. The party entitled to costs and disbursements on such appeal shall recover from the opponent the amount so paid."[1]

ORS 21.605 authorizes this court to defer or waive the filing fee required by ORS 21.010 based on a showing that the moving party is unable to pay it.[2] However, petitioner sought

---

[1] The Oregon legislature first enacted a court filing fee statute in 1899. Or Laws 1899, § 2, p 168. A statute prescribing a uniform filing fee for civil actions has been in effect continuously since that time.

[2] ORS 21.605(1)(a) provides:

"The Chief Justice of the Supreme Court, the Chief Judge of the Court of Appeals, a judge of a circuit or county court, the judge of the Oregon Tax Court or a justice of the peace may waive in whole or in part, defer in whole or in part, or both, all fees and court costs payable by a party to a particular civil action or proceeding in the court of the justice or judge, upon application by the party, if the justice or judge finds that the party is unable to pay all or any part of the fees and costs. Waiver or deferral of an inmate's fees and court costs is subject to ORS 30.642 to 30.650."

relief from the filing fee on a different ground, namely, that its imposition runs afoul of the Justice Without Purchase Clause of Article I, section 10, which provides that "[n]o court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay * * *."

We initially denied petitioner's request for a waiver in part on the ground that petitioner had failed to provide financial information demonstrating that he was unable to pay the filing fee. We also rejected petitioner's constitutional argument, citing *Ortwein v. Schwab*, 262 Or 375, 382, 498 P2d 757 (1972) (a uniform filing fee does not violate the Remedy by Due Course of Law Clause of Article I, section 10). Petitioner has petitioned for reconsideration, pointing out that *Ortwein* addressed the constitutionality of an appellate court filing fee under the Remedy by Due Course of Law Clause of Article I, section 10, not the Justice Without Purchase Clause. Petitioner further argues that the Justice Without Purchase Clause has its roots in the reaction of American colonists to the British Stamp Act of 1765, which, among other things, required the purchase of a government stamp as consideration for the filing of legal documents.[3]

Early in Oregon's history, the Supreme Court rejected a litigant's contention that the statutorily required trial fee contravened the Justice Without Purchase Clause of Article I, section 10:

"Briefly, and yet without passing over points made in the argument without due consideration we are disposed to hold that the language of our Constitution that 'justice shall be administered * * * without purchase,' means simply that justice shall not be bought with bribes, nor shall the attendant or incidental expense of litigation, in the nature of costs and disbursements, be so exorbitant and

---

[3] The Stamp Act of 1765, provided, in part:

"For every skin or piece of vellum or parchment, or sheet or piece of paper, on which shall be ingrossed, written, or printed, any appeal, writ of error, writ of dower, *Ad quod damnum*, certiorari, statute merchant, statute staple, attestation, or certificate, by any officer, or exemplification of any record or proceeding in any court whatsoever within the said colonies and plantations * * * a stamp duty of ten shillings."

William F. Swindler, 1 Sources and Documents of United States Constitution 187 (2d series 1982).

onerous as to virtually close the doors of courts of justice to those who may have occasion to enter there."

*Bailey v. Frush,* 5 Or 136, 138 (1873); *accord Northern Counties Trust v. Sears,* 30 Or 388, 403-05, 41 P 931 (1895) (statute requiring clerk of the court to collect fees prescribed by statute does not violate Justice Without Purchase Clause). Although *Bailey* and *Northern Counties Trust* may furnish the short answer to petitioner's contention, it does not appear that the parties in those cases argued the point asserted by petitioner in this case and, therefore, the Supreme Court had no occasion to address it directly. Moreover, the Justice Without Purchase Clause has not been reexamined since the Supreme Court adopted a more rigorous methodology for determining the meaning of original constitutional provisions.[4] We take this occasion to do so.

■ In *Priest v. Pearce,* 314 Or 411, 415-16, 840 P2d 65 (1992), the Supreme Court described the methodology for interpreting an original constitutional provision, stating, "There are three levels on which that constitutional provision must be addressed: Its specific wording, the case law surrounding it, and the historical circumstances that led to its creation."

The key words at issue in Article I, section 10, are "openly and without purchase." Neither the phrase itself nor the words "openly" and "purchase" are defined in the constitution; however, the constituent words were defined in a dictionary predating the adoption of the Oregon Constitution. Noah Webster, 2 *An American Dictionary of the English Language* (1828),[5] defines "openly" as "[p]ublicly; not in private; without secrecy[.] * * * Plainly; evidently; without reserve or disguise[.]" Webster defines "purchase" as coming from

"the root of *chase; purchaser* is to pursue to the end or object, and hence to obtain. * * * The legal use of the word in obtaining writs, shows best its true origin; to *purchase* a writ, is to *sue out* a writ, that is, to seek it out; for *sue, seek,*

---

[4] That provision has not been altered since its adoption as part of the Oregon Constitution in 1857.

[5] The 1828 edition does not have regularly numbered pages.

and L. *sequor*, are all of one origin, and synonymous with chase. * * *

"1.  In *its primary and legal sense*, to gain, obtain or acquire by any means, except by descent or hereditary right.

"Blackstone.

"2.  In *common usage*, to buy; to obtain property by paying an equivalent in money. * * *

"* * * * *

"5.  To sue out or procure, as a writ."

(Emphasis in original.)

■■    The meaning of "openly" demonstrates, for purposes of Article I, section 10, that justice must be administered publicly and without secrecy. Because the challenged filing fee is prescribed by a statute that is publicly available to citizens and filing fees are assessed by the state court administrator without secrecy, the filing fee requirement comports with the constitutional mandate that justice be administered openly.

The relevant dictionary definitions of "purchase" also are straightforward. In its primary and legal sense, "purchase" did not necessarily require paying money for the legal redress sought. However, that legal meaning, "to gain, obtain or acquire by *any* means," *id.* (emphasis added), suggests that purchase takes place by means other than merely invoking the legal system to obtain redress, such as by paying money to achieve the particular result sought. That meaning is consistent with the relevant common usage of "purchase," which meant to pay "an equivalent in money." *Id.* Thus, the relevant meanings of "purchase" of justice suggest that Article I, section 10, bars the procurement of legal redress by such means as paying money for a particular outcome.

With respect to other cases interpreting the Justice Without Purchase Clause, as noted above in *Bailey*, the court held that a uniform trial fee did not violate that clause. *See Bailey*, 5 Or at 137-40. *Bailey* thus supports the conclusion that a nonexorbitant, uniform appellate filing fee likewise

would not violate the Justice Without Purchase Clause of Article I, section 10.

Finally, consideration of the historical circumstances surrounding the adoption of Article I, section 10, yields additional clues. When Oregonians sought statehood in 1857, at least 17 other states, including Indiana, had adopted provisions similar to Article I, section 10. David Schuman, *Oregon's Remedy Guarantee: Article I, Section 10 of the Oregon Constitution*, 65 Or L Rev 35, 40 (1986). The Constitutional Convention considered the constitutions of other states, and some of their elements likely were included in the final version of the Oregon Constitution.[6] However, Article I, section 10, of the Oregon Constitution differs slightly from the corresponding provisions adopted by those states, including Article I, section 12, of the Indiana Constitution (1851).[7]

Charles Henry Carey's, ed., *The Oregon Constitution and Proceedings and Debates of the Constitutional Convention of 1857* 342 (1926), does not mention Article I, section 10, directly, except to refer to its adoption without argument. However, Carey's record of the debates suggests that Article 40 of the Magna Carta is the original source of Article I, section 10. George H. Williams, a signer of the Oregon Constitution, participated in the constitutional debates. On August 19, 1857, referring to the bills of rights of which section 10 is a part, Williams said, "These bills of rights have originated from the Magna Charta * * *." Carey, *The Oregon Constitution* at 103.

---

[6] Although addressed to the remedy guarantee clause, Professor Schuman's caution against overzealous reliance on the wording of comparable provisions of Indiana's Constitution may be equally applicable to the present problem:

"The accepted wisdom tells us that the Oregon provision was modeled on the remedy clause in the Indiana Constitution of 1851, but there is no internal evidence to support that document over any of the others listed, and the existing records of the convention are inconclusive."

Schuman, 65 Or L Rev at 40-41 (footnotes omitted).

[7] Article I, section 12, of the Indiana Constitution provides:

"All courts shall be open; and every man, for injury done to him in his person, property, or reputation, shall have remedy by due course of law. Justice shall be administered freely, and without purchase; completely, and without denial; speedily, and without delay."

The Magna Carta was adopted in 1215, while England was under the rule of King John. "Article 40 of [the Magna Carta], addressed to reforming the system of writs for sale, contained John's promise, 'To none will we sell, to none deny, or defer right and justice.'" Schuman, 65 Or L Rev at 38. J. C. Holt, in his book *Magna Carta*, explained:

> "[J]ustice was a source of revenue. Like his predecessors, [King] John was ever ready to accept special proffers from vassals in search of their own particular view of justice. Furthermore, after 1204 he [King John] was almost continuously accessible in England. This encouraged a vigorous market. Against this [Article 40] of the Charter now simply asserted the principle that justice should not be sold, denied or delayed. This may have helped to cure some of the ills."

J. C. Holt, *Magna Carta* 226 (1965) (footnote omitted); *accord Northern Counties Trust*, 30 Or at 403-05 (guarantee in Oregon Constitution that justice shall be administered openly and without purchase was first promulgated in Magna Carta).

Considering the wording of Article I, section 10, together with case law interpreting it and the historical circumstances surrounding its adoption, we conclude that the Justice Without Purchase Clause was meant to prohibit (1) the procurement of legal redress through bribery and other forms of improper influence; and (2) the judicial imposition of fees and costs in amounts so onerous as to unreasonably limit access to the courts.

By contrast, payment of the filing fee prescribed by ORS 21.010 does not procure any particular result. An appeal or petition for judicial review ultimately may be dismissed for jurisdictional reasons or for failure to prosecute, or it could be resolved adversely to the petitioner on its merits. However, the filing fee is paid at the beginning of the appellate process and without regard to the outcome. Moreover, the last sentence of ORS 21.010(1) provides that the filing fee paid by a prevailing party is recoverable from the losing party, a structure that is inconsistent with the "purchase" of any particular result. Finally, the fact that the filing fee can be waived or deferred based on a showing of indigence or hardship under

ORS 21.605 demonstrates that it is not an unreasonable bar to access to the courts.

The uniform filing fee for legal documents required by the English Stamp Act of 1765 was similar to the fee imposed by ORS 21.010 in that it was payable irrespective of the outcome of the proceeding. However, there is no evidence that the framers of the Oregon Constitution had the Stamp Act in mind in adopting Article I, section 10. Nor has petitioner demonstrated that any of the 17 similar provisions contained in state constitutions that predated Article I, section 10, originated from objections to the English Stamp Act.

Based on all relevant sources of inquiry, we conclude that ORS 21.010 does not violate the Justice Without Purchase Clause of Article I, section 10, of the Oregon Constitution. Accordingly, on reconsideration, we adhere to our denial of petitioner's motion to waive the statutory filing fee.

Petition for reconsideration granted; on reconsideration, order denying motion to waive filing fee adhered to.