Argued and submitted March 31, 2022, affirmed January 25, petition for review denied May 18, 2023 (371 Or 106)

MARK ELWYN LAWSON,
*Plaintiff-Respondent,*

*v.*

Brad CAIN,
Superintendent,
Snake River Correctional Institution,
*Defendant-Appellant.*

Malheur County Circuit Court
20CV19590; A175845

524 P3d 529

Defendant, the superintendent of Snake River Correctional Institution (SRCI), appeals from a judgment granting habeas corpus relief to plaintiff, an adult in custody (AIC) at SRCI, on the grounds that defendant's failure to provide adequate preventative and management measures in response to the COVID-19 virus in the prison subjected plaintiff, who is medically vulnerable, to "unnecessary rigor" in violation of Article I, section 13, of the Oregon Constitution. On appeal, defendant contends that Article I, section 13, applies only to persons who have been arrested or confined in jail, but have not yet been convicted of a crime, and that an Article I, section 13, claim requires a plaintiff to prove that the defendant intentionally subjected them to abusive treatment or was deliberately indifferent to seriously harmful or dangerous conduct or conditions. *Held*: The Court of Appeals concluded that both of defendant's arguments are foreclosed by *Sterling v. Cupp*, 290 Or 611, 625 P2d 123 (1981).

Affirmed.

Amy M. Baggio, Judge.

E. Nani Apo argued the cause for appellant. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Jedediah Peterson argued the cause for respondent. Also on the brief was O'Connor Weber LLC.

Before Ortega, Presiding Judge, and Powers, Judge, and Hellman, Judge.

ORTEGA, P. J.

Affirmed.

**ORTEGA, P. J.**

Defendant, the superintendent of Snake River Correctional Institution (SRCI), appeals from a judgment granting habeas corpus relief to plaintiff, an adult in custody (AIC) at SRCI. After an evidentiary hearing, the trial court granted in part plaintiff's third claim for relief on the grounds that defendant's failure to provide adequate preventative and management measures in response to the COVID-19 virus in the prison subjected plaintiff, who is medically vulnerable, to "unnecessary rigor" in violation of Article I, section 13, of the Oregon Constitution. On appeal, defendant raises two assignments of error, both of which we conclude are foreclosed by *Sterling v. Cupp*, 290 Or 611, 625 P2d 123 (1981). Accordingly, we affirm.

We draw the relevant facts, which are undisputed, from the trial court's written opinion and order. SRCI is located in Malheur County and is the designated Oregon Department of Corrections (ODOC) facility for treating AICs from around the state who are suffering from COVID-19 because its infirmary has six negative pressure cells and 24-hour nursing care. Between May 2020 and the February 2021 evidentiary hearing in this case, defendant made ongoing and evolving efforts to prevent and combat COVID-19 in the prison, including imposing mask requirements consistent with Governor Brown's executive orders and conducting regular symptom checks on staff members, although defendant did not require staff to test for COVID-19. Defendant's efforts to enforce compliance with masking requirements were met with resistance and the spread of misinformation by both prison officials and AICs. Most SRCI staff live in Idaho, where masks were not required and not broadly worn, and it was difficult for staff to understand why masks were required in one state and not the other. Staff were on the whole skeptical about virus risks and the value of masking, and staff views on the pandemic, including misinformation and conspiracy theories, spread to AICs.

SRCI staff and AICs were subject to discipline for not complying with masking rules, but defendant did not consistently enforce the rules because the issue was so controversial with staff and because defendant did not want to risk organized resistance from AICs. AICs could file a

grievance to report staff who failed to wear masks, but understandably feared retaliation from staff in positions of power over them. AICs refused to report COVID-19 symptoms because those suspected of being exposed to or contracting the virus were moved to the disciplinary unit for isolation, which they viewed as punishment. As a result, some AICs hid their symptoms and threatened others for reporting symptoms.

At the time he filed his petition in June 2020, plaintiff was a 62-year-old AIC who had been housed at SRCI since 2016. He suffers from various medical conditions, including chronic obstructive pulmonary disease (COPD). Plaintiff's age and medical conditions render him a medically vulnerable person at high risk of serious illness or death were he to contract COVID-19. He was terrified of contracting the virus and lived in constant fear, although he declined to receive the COVID-19 vaccine in January 2021 because it was not approved by the United States Food and Drug Administration and he was concerned about breathing difficulties as a potential side effect.

Plaintiff's habeas replication raised four claims for relief,[1] two of which are relevant to this appeal. In his first claim, plaintiff alleged that defendant took insufficient measures to protect him from COVID-19 and that defendant's inadequate safety measures constituted cruel and unusual punishment in violation of Article I, section 16, of the Oregon Constitution and the Eighth Amendment to the United States Constitution. Plaintiff alleged that defendant knew about plaintiff's medical conditions and high-risk status and exhibited deliberate indifference to his serious medical needs by failing to adequately protect him against that risk. In his third claim, plaintiff alleged that defendant's insufficient protective measures, which exposed him to an ongoing and serious health hazard, violated his Article I, section 13, right to be free from unnecessary rigor.[2]

_____

[1] A replication allows a plaintiff "to state *** allegations sufficient to constitute a claim for relief, and thereby overcome a motion to dismiss that asserts that deficiency in her pleading." *McClintock v. Schiedler*, 123 Or App 334, 338, 859 P2d 580 (1993) (construing ORS 34.670).

[2] In his second claim, plaintiff alleged that defendant's failure to provide adequate treatment and diagnosis of plaintiff's serious medical conditions, based

Defendant filed a partial motion to dismiss plaintiff's third claim, arguing that the Unnecessary Rigor Clause of Article I, section 13, applies only to persons who have been arrested or confined in jail, but have not yet been convicted of a crime. The trial court denied the motion, concluding that defendant's argument was contrary to Oregon precedent, including *Sterling*, that has applied the Unnecessary Rigor Clause to persons serving post-conviction prison sentences.

After the evidentiary hearing, the trial court denied plaintiff's first claim and granted his third claim in part. As to the first claim, the trial court concluded that plaintiff was being subjected to an unnecessarily dangerous environment at SRCI, but that plaintiff had failed to prove that defendant had acted with deliberate indifference to his medical needs. Specifically, the trial court concluded that "COVID-19 as managed at SRCI present[ed] an unnecessarily dangerous environment with specific regard to the failures in mask wearing and the risk those failures pose[d] to [p]laintiff," and that those failures violated "contemporary standards of decency." The court further concluded that, although it was "a very close call," plaintiff had failed to demonstrate that defendant "turned a blind eye and deaf ear to the COVID-19 problem in a manner indicative of total unconcern for [p]laintiff's welfare."

As to plaintiff's third claim, the court first rejected defendant's argument that an Article I, section 13, unnecessary rigor claim involves both a subjective and objective component, as with claims of cruel and unusual punishment under Article I, section 16, and the Eighth Amendment. The court concluded that, under *Sterling*, the analysis was a purely objective one. The court then concluded that defendant's failure to enforce proper mask-wearing at SRCI created "an unjustifiable risk of a serious health hazard" to

---

on defendant's treatment of plaintiff's medical conditions, constituted cruel and unusual punishment under Article I, section 16, and the Eighth Amendment. The trial court granted relief on that claim, and defendant does not challenge that ruling on appeal.

In his fourth claim, plaintiff alleged that defendant's handling of the COVID-19 pandemic violated his due process and equal protection rights under the Oregon and United States Constitutions. The trial court dismissed that claim before the evidentiary hearing for failure to state a claim.

medically vulnerable AICs, including plaintiff. The court ordered defendant to prepare a proposal to address the steps he would take to reduce unnecessary risks of COVID-19 to medically vulnerable AICs and enjoined defendant and his agents from retaliating against plaintiff. The court also awarded plaintiff costs and retained jurisdiction over the case to ensure compliance. Defendant timely appealed.

On appeal, defendant contends that the trial court erred in denying his partial motion to dismiss Claim 3 and in granting relief on that claim. Defendant presents two separate but related arguments in support of his assignments of error.

First, defendant contends that the Unnecessary Rigor Clause does not apply to persons who have been convicted of a crime and are serving a prison sentence as punishment for that crime. Defendant acknowledges that, beginning with *Sterling*, Oregon appellate courts have applied Article I, section 13, in the context of AICs serving prison sentences after a conviction, but defendant insists that neither *Sterling* nor cases applying it have had occasion to address, under the framework for interpreting constitutional provisions set forth in *Priest v. Pearce*, 314 Or 411, 840 P2d 65 (1992), whether the framers intended to limit Article I, section 13, to those arrested or confined but not yet convicted of a crime. In defendant's view, the court in *Sterling* assumed, but did not decide, that Article I, section 13, applies to convicted prisoners. Defendant contends that the text of Article I, section 13, in context, as well as the historical circumstances of its adoption and the case law that has construed it, support his position.

Second, defendant argues that the trial court applied an incorrect legal standard to plaintiff's third claim. Specifically, defendant contends that to establish a claim under Article I, section 13, a plaintiff must demonstrate both that they have been subjected to unnecessarily harmful or dangerous treatment (the objective component) and that the defendant intentionally subjected them to abusive treatment or was deliberately indifferent to seriously harmful or dangerous conduct or conditions (the subjective component). Defendant argues that case law construing and

applying Article I, section 13, has not established a standard for evaluating such claims and that the provision's text, context, and historical circumstances support his position, which is consistent with relevant case law.

Plaintiff responds that both of defendant's arguments are foreclosed by *Sterling* and cases applying its framework. As to defendant's first argument, plaintiff contends that *Sterling* squarely held that Article I, section 13, is addressed to prison practices and applied its protections to prisoners in a penitentiary. As to defendant's second argument, plaintiff contends that the standard announced in *Sterling* was a purely objective one: To establish a claim under Article I, section 13, a plaintiff need only show that "a particular prison or police practice would be recognized as an abuse to the extent that it cannot be justified by necessity." 290 Or at 620. Plaintiff points out that both the Supreme Court and this court have consistently followed *Sterling* in expressly applying Article I, section 13, to prison conditions and that the plaintiffs in *Sterling* prevailed on their claim without showing any subjective mental state on the part of the defendants. Finally, plaintiff argues that this court is in no position to reconsider *Sterling* and, even if it were, defendant has not demonstrated that *Sterling* was wrongly decided or failed to follow the *Priest* methodology for interpreting constitutional provisions.

Article I, section 13, provides that "[n]o person arrested, or confined in jail, shall be treated with unnecessary rigor." The Supreme Court first construed that provision in *Sterling*, which we discuss in detail, given the parties' dispute.

The plaintiffs in *Sterling* were male inmates at Oregon State Penitentiary (OSP) who had successfully sued to enjoin the defendant OSP superintendent and other prison officials from assigning female guards to duties that involved frisking male prisoners or observing them in showers and toilets. 290 Or at 613. On appeal, the defendants contended that no constitutional rights of the plaintiffs were violated, and this court affirmed the trial court's injunction on the basis of a federal constitutional right to privacy. *Id.* at 613-14.

On review, the Supreme Court set out to analyze Oregon law before addressing a federal constitutional claim. *Id.* at 614. The court explained that Article I, section 13, which has no analogue in the federal Bill of Rights, "confine[s] 'rigorous' treatment to prisoners within constitutional bounds of necessity" and is "directly addressed to prison practices." *Id.* at 617, 619. The court explained that Article I, section 13, is "in th[e] tradition" of similar provisions in other state constitutions dating from as early as 1783, which "reflect a widespread interest in penal reform in the states during the post-Revolutionary decades" and "a commitment to humanizing penal laws and the treatment of offenders to rank with other principles of constitutional magnitude independently of any concern of the Congress or of Madison's Bill of Rights." *Id.* at 617-18 & nn 10-15.

In explaining why Article I, section 13, was "a more cogent premise" to decide the inmates' claim than a federal right to privacy, the court observed that Article I, section 13, "is addressed specifically to the treatment of persons 'arrested, or confined in jail,'" so "there can be no argument that rights under this guarantee are forfeited by conviction of crime or under lawful police custody, as those are the circumstances to which its protection is directed." 290 Or at 619. In contrast to the federal right to privacy's "elasticity in the face of important public policies," Article I, section 13, "itself makes necessity the test of the practices it controls." 290 Or at 619. The court explained that, unlike Article I, sections 15 and 16, which are directed specifically at methods or conditions of "punishment," Article I, section 13, "extends to anyone who is arrested or jailed" and is not "confined only to such historically 'rigorous' practices as shackles, the ball and chain, or to physically brutal treatment or conditions." 290 Or at 619. The court framed the inquiry as whether a police or prison practice "constitutes a cognizable indignity and if so, whether it is justified by necessity." *Id.* at 622.

As to the first prong, "what is or is not an indignity is largely a matter of social and individual psychology," and "a practice may appear to be so from the purpose of its imposition, or from the viewpoint of the prisoner, or in the perception of the general public." *Id.* at 623. Moreover, "such views may differ widely among individuals and change over time

with changing social expectations." *Id*. Applying that framework, the court concluded that the alleged prison practices constituted a cognizable indignity under Article I, section 13, despite the fact that "there [wa]s no claim that shakedowns by female guards were purposely designed to humiliate the prisoners." *Id*. Turning to the second prong, the court concluded that the alleged prison practices were not justified by necessity because nothing "intrinsic to the searches themselves, nor from a shortage of skilled personnel" gave rise to necessity, and the court rejected the defendants' claims that the state's policy of providing equal occupational opportunities to women rendered the practice necessary. *Id*. at 625-28.

The court concluded by reiterating that the lower courts had "correctly recognized that prisoners can raise a constitutionally founded objection to a search by corrections officers of the opposite sex that involves touching of sexually intimate body areas even through clothing" but that "[t]he source is * * * [A]rticle I, section 13." *Id*. at 632. "Under that section, the objection is overcome when and to the extent that the circumstances of the specific search make its performance by an officer of the opposite sex 'necessary.'" *Id*. The court affirmed the judgment granting the injunction. *Id*.

Returning to this case, we conclude that *Sterling* forecloses defendant's two assignments of error. As to the first, we do not read *Sterling*, as defendant contends, to merely assume that Article I, section 13, applies to those confined in prison serving post-conviction sentences. Rather, the court construed that provision's text, context, and history, and held it to apply to anyone arrested or confined, including those who have been convicted and are serving prison sentences. *Id*. at 617-20. Indeed, both the Supreme Court and this court have subsequently read *Sterling* to apply Article I, section 13, protections to inmates who are confined in prison upon conviction of a crime. *Bedell v. Schiedler*, 307 Or 562, 570 & n 7, 770 P2d 909 (1989) (holding that the plaintiff's allegation that the prison environment in which she was confined unnecessarily subjected her to serious health hazards stated a cognizable claim under Article I, section 13); *Schafer v. Maass*, 122 Or App 518, 522, 858 P2d

474 (1993) (holding that the plaintiff's allegation that he was being subjected to "ongoing and periodical" assaults by named defendants in the Intensive Management Unit at OSP stated a cognizable Article I, section 13, claim); *State v. Freudenthaler*, 84 Or App 531, 535, 734 P2d 894, *rev den*, 303 Or 455 (1987) ("[T]he historical analysis of [Article I, section 13,] in *Sterling*[] makes it clear that the provision is directed to prison practices.").

As to defendant's second assignment of error, we read *Sterling* to announce a purely objective framework under Article I, section 13: whether a police or prison practice constitutes (1) a cognizable indignity and (2) lacks necessity. Contrary to defendant's argument, a plaintiff need not establish that the defendant acted with a particular subjective intent. The *Sterling* court affirmed the judgment granting the plaintiffs an injunction despite the fact that they did not allege—and there was no evidence to support—that the prison practices "were purposely designed to humiliate the prisoners." 290 Or at 623, 632. The court's only indication that a defendant's subjective intent may be relevant to the analysis is as to the question of whether an alleged police or prison practice constitutes a cognizable indignity under Article I, section 13. *See id.* at 623 (explaining that "what is or is not an indignity is largely a matter of social and individual psychology," and "a practice may appear to be so from the purpose of its imposition" among other perspectives).[3]

Finally, we agree with plaintiff that this court is in no position to reconsider *Sterling*. "We are an intermediate appellate court, bound by the precedent of the Supreme Court." *State v. Portulano*, 320 Or App 335, 355, 514 P3d 93 (2022).

Affirmed.

---

[3] Because we conclude that *Sterling* controls both of defendant's assignments of error, we need not consider defendant's additional arguments.