On petition for alternative writ of mandamus, submitted December 22, 1983, peremptory writ issued January 13, 1984

## STATE ex rel LOWREY,
*Petitioner-Relator,*

*v.*

## MERRYMAN,
*Defendant.*

### (No. 83-3186-C-1, SC S30296)

674 P2d 1173

Thomas C. Howser, Cottle & Howser, Ashland, for petitioner-relator.

Dave Frohnmayer, Attorney General, James E. Mountain, Jr., Solicitor General, and Thomas H. Denney, Assistant Attorney General, Salem, for defendant.

PER CURIAM

## PER CURIAM

This is an original proceeding in mandamus, of which we take jurisdiction under Or Const Art VII (Amended), § 2.[1] We are asked to command the defendant circuit judge to order release of the relator, who is a prisoner awaiting trial, on the prisoner's own recognizance or to reduce "bail"[2] from the amount of $200,025 now set by the circuit court to the sum of $10,000.

From the record, we find that the relator has been charged with the crime of attempted murder upon her husband. She was indicted on September 1, 1983. On the following day a circuit court judge in Jackson County ordered "that security, including assessment, be set in the sum of $200,025.00." Subsequent to her arraignment the relator was committed to the Oregon State Hospital for examination and observation to determine matters relating to her ability to assist in her own defense and to her responsibility. After she was returned from the hospital to the Jackson County Jail, a hearing was held before the defendant circuit judge in Jackson County Circuit Court on November 30, 1983, upon her request that her "bail" be reduced or that she be released upon her own recognizance.

Upon the basis of argument of counsel for the state and for relator and the request that this defendant judge consider further medical reports to be furnished by relator's counsel, the defendant judge made no change in the terms for release but agreed to consider the further reports and to take up the relator's request when that had been accomplished.

On December 7, 1983, defendant reconvened the matter. The state's attorney expressed the position of the state that the doctors' various reports warranted the conclusion that the relator, by reason of her mental condition, was a

---

[1] That section of the Oregon Constitution also gives this court jurisdiction in habeas corpus, which is the usual form of proceeding presented to this court to adjudicate claims that a circuit court has not complied with the pretrial release statutes.

[2] Technically, Oregon abandoned the concept of "bail" in 1973, substituting therefor a release procedure, a part of which is a security release. ORS 135.230 to 135.290. As we understand the facts of this case, the need for and the amount of the security release is at issue. Apparently, the word "bail" had become so engrained in our criminal jurisprudential lexicon that the passage of a decade has not laid it to rest.

danger to herself and others and that the doctors were only "speculating" in voicing the opinion that relator "would be better out of jail." He noted the seriousness of the criminal charge and summarized:

> "The question at this point is not whether it's doing her any good or not, but whether we're protecting society by keeping her in during the pending outcome of this criminal matter."

The prosecutor voiced no indication that the state thought she would not appear for further proceedings in the criminal action if released on her own recognizance or if the amount for security release were reduced.

The defendant voiced his concern that it might well be more traumatic for relator to be returned to her home or the community than to stay in jail pending trial. Defendant went on to state:

> "It appears that the choice really is to leave bail relatively high or recog Mrs. Lowrey. I can't bring myself to recog her. I think there's too much danger involved. I would not consider making bail nominal bail. There really doesn't seem to be any interim position. I'm going to leave security as it is."

Following further colloquy, the defendant stated:

> "Let me remind Counsel that this matter comes before the Court on invitation of Counsel to consider the doctors' reports as a basis for release. All I'm finding is that the doctors' reports say that there was some turmoil, some conflicts within the family and within the home that led to a violent outburst. Nothing there gives me any assurance that if she's returned to that family home a similar violent outburst won't occur, and that's all I'm saying is that they're not assuring me that I can have any confidence that if I release Mrs. Lowrey there won't be a re-occurrence of this unlawful conduct, and that's the relationship to bail. Bail is used to insure that one will appear. I don't find that any particular problem in Mrs. Lowrey's case. Bail is also used to protect the community from a re-occurrence, and I find nothing here to give me any assurance that because of the nature of this initial occurrence being the turmoil and conflict within the family that if we allow Mrs. Lowrey to return to the family home, that there won't be another occurrence."

We find from the defendant's statements that he well recognized that "bail" is to ensure appearance and that he did

not believe that relator would not appear if she could gain her release.

■        Relator heavily relies upon our decision in *Sexson v. Merten,* 291 Or 441, 631 P2d 1367 (1981). That decision is not squarely in point, for it concerns what conditions are not permissible for a judge to impose for inclusion in a security release agreement. The opinion in that case makes clear, however, that this court unanimously believed the statutory scheme for release pending trial had as its objective the ensuring that the prisoner will appear and that the prisoner must be released upon the least onerous conditions that will assure appearance. Release upon personal recognizance is the legislatively preferred type of release. ORS 135.245(3).

In another relatively recent case, *Owens v. Duryee,* 285 Or 75, 589 P2d 1115 (1979), also not squarely in point, we unanimously stated our view that the purpose of "bail" is to ensure appearance and that it may not be set at an amount chosen, as a practical matter, to make it impossible for a prisoner to secure release.

■        To us it appears inescapable that the defendant's refusal to release relator upon personal recognizance or an amount considerably less than $200,000 is dictated by defendant's expressed concern that relator's mental condition is such that she might harm herself or others if she were to be released. If she had assets available to post 10 percent of the presently set security amount, ORS 135.265, however, she would be released despite the defendant's concern. The defendant has expressed his finding that he has no concern that relator would not appear if she were to be released.

It is the order of this court that a peremptory writ of mandamus issue out of this court in usual form commanding defendant forthwith on receipt of the writ to order release of relator upon her own recognizance or upon such other conditions or security amount as are least onerous and will reasonably assure the relator's appearance. ORS 135.265(1).