No. 54 August 11, 2016 201

# IN THE SUPREME COURT OF THE STATE OF OREGON

STATE OF OREGON,
*Respondent on Review,*

*v.*

ROBERT GORDON DAVIS,
*Petitioner on Review.*

(CC 131084; CA A154382; SC S063216)

On review from the Court of Appeals.*

Argued and submitted November 13, 2015.

Rond Chananudech, Deputy Public Defender, Salem, argued the cause and filed the brief for petitioner on review. With him on the brief was Ernest G. Lannet, Chief Defender, Office of Public Defense Services.

Shannon T. Reel, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. With her on the brief were Ellen F. Rosenblum, Attorney General, and Paul L. Smith, Deputy Solicitor General.

Before Balmer, Chief Justice, and Kistler, Walters, Landau, Baldwin, Brewer, and Nakamoto, Justices.**

LANDAU, J.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

_____

* Appeal from Clatsop County Circuit Court, Philip L. Nelson, Judge. 270 Or App 351, 350 P3d 234 (2015).

** Linder, J., retired December 31, 2015, and did not participate in the decision of this case.

**LANDAU, J.**

Two police officers approached defendant, suspecting that he had been involved in an assault. Defendant bolted. The police ran after him, yelling, "Stop, police!" Defendant kept running away. The issue in this case is whether, in running from the police, defendant committed the criminal offense of third-degree escape. The statute that defines the offense requires proof that the defendant was in custody at the time of the escape. ORS 162.145(1). The trial court concluded that the police, in shouting for defendant to stop, had effectively placed him in "constructive custody." The Court of Appeals agreed, affirming without a written opinion. *State v. Davis*, 270 Or App 351, 350 P3d 234 (2015). We conclude that police merely shouting for another person to stop does not place that person in custody for the purposes of establishing third-degree escape. We therefore reverse.

The relevant facts are not in dispute. Defendant threatened and assaulted two people outside of a store, and two uniformed officers were dispatched to the area. When the officers arrived, one of them saw defendant walking away from a group of people. Believing that defendant was the perpetrator, the officer got out of his patrol car and identified himself as a police officer. Defendant ran away. The officer chased him and repeatedly yelled "Stop, police!" The other officer pursued defendant in his patrol car, activating its overhead emergency lights and siren. Defendant kept running and continued to run from the officers until they apprehended him. The state ultimately charged him with third-degree escape for fleeing from police after the officer commanded him to stop.

At trial, defendant moved for a judgment of acquittal, arguing that the state failed to prove that he had been in custody for purposes of the third-degree escape statute. Specifically, he argued that the police did not constructively place him in custody merely by shouting "Stop police!" and following him with the police siren on. In response, the state argued that "with the police yelling—telling [defendant] they were police, telling him to stop, being in clear uniform *** would count as the escape from custody."

The trial court denied defendant's motion, concluding that defendant had been constructively restrained:

> "Well, I think on that one, where you have 'stop' and then 'stop, police,' at least—while we were waiting for your last witness, it would have been nice if it had said, 'stop, you're under arrest, stop police,' but I think saying, 'stop, stop, police' is sufficient to establish a person is in *** constructive custody."

Defendant was convicted. He appealed, assigning error to the trial court's denial of his motion for judgment of acquittal. The Court of Appeals affirmed without a written opinion.

Before this court, defendant argues that there was no evidence that, when he ran from police, he was escaping from "custody" as required by ORS 162.145(1), the statute that defines the elements of third-degree escape. Defendant notes that ORS 162.135(4) defines "custody" as the imposition of "actual or constructive restraint *** pursuant to an arrest or court order." As defendant sees it, the statute's wording is significant in two respects. First, it refers to an escape from restraint that was imposed pursuant to an "arrest." Defendant argues that the term "arrest" is one of art and refers to "formally taking a person into custody or actually restraining a person." Second, defendant notes that the statute refers to the escape from restraint "pursuant to" such an act of formally taking a person into custody or actually restraining the person. Thus, defendant concludes, third-degree escape occurs only when a person escapes from restraint "*after* a formal arrest," which he insists necessarily involves being taken into physical custody. (Emphasis added.) Said another way, defendant sees the statute as requiring a specific sequence of events: First, the police must formally arrest a person by taking him or her into physical custody. Second, thereafter, a person may commit third-degree escape if he or she escapes from actual or constructive restraint. In this case, defendant argues, the police had not yet placed him in physical custody before he escaped. They merely yelled, "Stop, police!"

The state responds that defendant's proposed interpretation is contrary to the wording of the relevant statutes, which refer to escape from actual or *constructive restraint*

during the course of an arrest, not necessarily after formal, physical custody has been achieved. In the state's view, the evidence shows that police placed defendant in constructive custody by yelling, "Stop, police," in the course of trying to arrest him. When defendant ran away, the state concludes, he committed third-degree escape.

The parties' arguments thus require two things of us. First, we must determine what is required to establish the elements of the offense of third-degree escape. That presents a question of statutory construction, which necessitates an examination of the text of relevant statutes in context, along with any pertinent legislative history and other aids to construction. *State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009). Second, we must determine whether the state offered sufficient evidence to survive defendant's motion for a judgment of acquittal. That requires us to view the facts and all reasonable inferences that can be drawn from them in the light most favorable to the state, to assess whether a reasonable finder of fact could find proof of each of the elements of the offense beyond a reasonable doubt. *State v. Waterhouse*, 359 Or 351, 353, 373 P3d 131 (2016).

We begin with the elements of the offense of third-degree escape. ORS 162.145(1) provides that "[a] person commits the crime of escape in the third degree if the person escapes from custody." An "escape" is the "unlawful departure of a person from custody." ORS 162.135(4). It includes running away. *See State v. Lonergan*, 344 Or 15, 21, 176 P3d 374 (2008) (defendant committed third-degree escape when he "stood up and ran" from custody). "Custody," in turn, means the "imposition of actual or constructive restraint by a peace officer pursuant to an arrest or court order, but does not include detention in a correctional facility, youth correction facility, or a state hospital." ORS 162.135(5).

The legislature has not defined the key terms of the statutory definition of "custody"—"constructive restraint" or "pursuant to an arrest"—and this court has not yet had occasion to interpret them. "Constructive" ordinarily means "[i]nferred—often used in law of an act or condition assumed from other acts or conditions which are considered by inference or by public policy as amounting to or involving

the act or condition assumed." *Webster's Third New Int'l Dictionary* 489 (unabridged ed 2002); *see also Black's Law Dictionary* 333 (4th ed 1968) (defining "constructive" as "[t]hat which has not the character assigned to it in its own essential nature, but acquires such character in consequence of the way in which it is regarded by a rule or policy of law"). "Restraint" usually refers to "the condition of being restrained, checked, or controlled : deprivation of liberty : confinement." *Webster's* at 1937. Taken together, those definitions suggest that a person is subject to "constructive restraint" when an officer lawfully asserts authority to control a person's actions or freedom of movement, even if the officer does not have physical control of the person.

That leaves the requirement that the act of placing another person in actual or constructive restraint have been taken "pursuant to" an "arrest." The former term generally refers to "in the course of carrying out" or "in conformance to or agreement with : according to." *Webster's* at 1848; *see also Black's* at 1401 ("in accordance with or by reason of something; conformable; in accordance; agreeably; conformably; a carrying out or with the effect, the act of executing"). Thus, in *State v. McVay*, 313 Or 292, 833 P2d 297 (1992), this court held that a defendant had not committed third-degree escape when he ran from police officers who had lacked authority to arrest him at that time. The court explained that, although the officers had restrained him before he had escaped, that restraint was not "pursuant to an arrest." *Id*. at 295-96.[1]

The term "arrest" itself is not defined in the statute setting out the elements of the offense. At the time of the enactment of ORS 162.135(4), however, there did exist two other statutory definitions of "arrest." *See generally State v.*

---

[1] The state emphasizes the first of the quoted definitions—"in the course of carrying out"—observing that defendant does not argue that any of the other definitions applies. In construing a statute, however, our task is not merely to pick among interpretations that the parties choose to advance. Rather, it is to determine the interpretation that the legislature most likely intended, regardless of the parties' arguments. *Engweiler v. Persson / Dept. of Corrections*, 354 Or 549, 559, 316 P3d 264 (2013) ("[T]his court has an obligation to reach what we regard as a correct interpretation of statutes and rules. Indeed, we are so obliged whether or not the correct interpretation has even been advanced by the parties.").

*McClure*, 355 Or 704, 708, 335 P3d 1260 (2014) (describing history of statutory definitions of "arrest"). One defined the term to mean "the taking of a person into custody so that he may be held to answer for a crime." *Former* ORS 133.210 (1969), *repealed by* Or Laws 1973, ch 836, § 358. The other provided that "[a]n arrest is made by an actual restraint of the person of the defendant or by his submission to the custody of the officer." *Former* ORS 133.250, *repealed by* Or Laws 1973, ch 836, § 358.[2] Both of those are consistent with the ordinary meaning of the term as "[t]aking, under real or assumed authority, custody of another for the purpose of holding or detaining him to answer a criminal charge or civil demand." *Black's* at 140. They are also consistent with the way that this court has generally referred to the term "arrest" in discussing police encounters that are subject to the constraints of Article I, section 9, of the Oregon Constitution, which protects against unreasonable searches and seizures. *See, e.g.*, *State v. Ashbaugh*, 349 Or 297, 308-09, 244 P3d 365 (2010) ("arrests" are "restraints on an individual's liberty that are steps toward charging individuals with a crime").

With those definitions in mind, then, third-degree escape occurs when a person runs away from a police officer who has lawfully asserted authority to control a person's freedom in the course of carrying out an arrest, that is, in the course of taking a person into custody to answer for a crime. Contrary to defendant's argument, the relevant statutes do not provide that third-degree escape may occur only *after* a person has been taken into physical custody; ORS 162.135(4) specifies that the offense occurs when a person escapes custody *during the course* of an arrest or when police attempt to restrain that person *pursuant to their authority* to make such an arrest.

That much, at least, is evident from an examination of the text of ORS 162.135(4) and ORS 162.145(1). There is little in the legislative history that touches on the intended

---

[2] Both statutes were repealed and replaced with what is now ORS 133.005(1), which defines "arrest" as "to place a person under actual or constructive restraint or to take a person into custody for the purpose of charging that person with an offense." That definition, unlike the ones that it replaced, is limited in its application to ORS chapter 133 and so had no direct application to this case.

meaning of those statutes. But a review of the little history that does exist appears to confirm what our analysis of the text suggests.

Both ORS 162.135(4) and ORS 162.145(1) were enacted as part of the revision of the Oregon Criminal Code based on the recommendations of the Criminal Law Revision Commission in 1970. Or Laws 1971, ch 743, §§ 189-90. During a meeting of the commission, members discussed the offense of third-degree escape, as well as the related offense of resisting arrest. At one point during the discussion of resisting arrest, one of the members, Judge Burns, raised the question whether flight from arrest was "covered elsewhere." A representative of the Office of Legislative Counsel, Wallingford, replied that, "if an arrest had been made, flight would be escape in the third degree in that the person would be in constructive custody." Minutes, Criminal Law Revision Commission, Jan 23, 1970, 20. Another commission member, Knight, then asked precisely when an arrest would be made, and Wallingford replied that "it was made at the moment the officer verbally or physically made it known that the individual was under arrest." *Id*.

Defendant seizes on Wallingford's reference to an arrest having been "made" as evidence that the legislature intended a completed, physical arrest to have been accomplished before the escape could take place. But that is contradicted by Wallingford's immediately following qualification, in which he said that the escape could occur any time after the officer "made it known that the individual was under arrest," which he said would constitute "constructive custody." As we have suggested, the statute applies when a person escapes from constructive restraint that occurs during the course of an arrest or pursuant to the authority to make an arrest, not solely after police have taken the person into physical custody. Thus, for example, if an officer were to say, "Stop, police! You are under arrest," the statute would apply if a defendant were to continue running from the officer. The defendant would have been subject to constructive restraint "pursuant to" an arrest; indeed, as the foregoing legislative history suggests, the defendant in that example would effectively be escaping from an arrest, albeit not one that involved actual, physical custody.

The commission's official commentary to the proposed revisions sheds little additional light. It does say that the proposed revision

> "defines 'custody' as the imposition of actual or constructive restraint by a peace officer pursuant to either (a) an arrest, or (b) a court order. *** 'Custody' is intended to apply to custodial situations other than correctional facility confinement, *i.e.*, while the actor is under actual or constructive restraint but not yet committed to a correctional facility."

Commentary to the Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 189, 193 (July 1970). That particular comment confirms our interpretation of the phase "pursuant to" as referring to imposing actual or constructive restraint not *after* a completed, physical arrest, but in the course of or under the officer's authority to make an arrest. In emphasizing that the term "custody" is intended to apply to circumstances in which confinement has not yet actually occurred, the comment also appears to confirm that the statute applies to an escape that occurs before physical restraint has been imposed; rather, it applies when escape occurs while the person was under constructive restraint in the course of an arrest or in carrying out authority to arrest.

With that in mind, we turn to our second task, that is, to determine whether the trial court erred in denying defendant's motion for a judgment of acquittal. The evidence in this case shows that, when officers located defendant, one of them got out of his patrol car and identified himself as a police officer. Defendant ran away. The officer chased him and yelled "Stop, police!" The other officer pursued defendant in his patrol car, activating its overhead emergency lights and siren. Defendant kept running and continued to run from the officers until they apprehended him.

A reasonable trier of fact certainly could conclude from that evidence that the officer had, by yelling "Stop, police!," placed defendant in constructive restraint. The officer asserted authority to restrict defendant's freedom to move about. What is missing, however, is any evidence that the officer did so "pursuant to an arrest" in any of the senses

that we have identified. There is no evidence that the officer yelled for defendant to stop as part of an effort to place him under arrest. There is no evidence that the officer told defendant to stop in accordance with the officer's authority to arrest him. The evidence, taken in the light most favorable to the verdict, shows only that, at the time defendant ran away, the officer had told him to *stop*. An order to stop is not necessarily equivalent to placing a person under arrest. The former entails a "temporary restraint on a person's liberty," while, as we have noted above, the latter involves a more significant "restraint[] on an individual's liberty that [is a] step[] toward charging that individual with a crime." *Ashbaugh*, 349 Or at 308-09; *see also State v. Rodgers/ Kirkeby*, 347 Or 610, 621-22, 227 P3d 695 (2010) (explaining distinctions between different police encounters, including "stops" and "arrests").

The state insists that defendant does not dispute the fact that the officer intended to arrest him. Cited in support of that assertion is a page from defendant's brief before this court. What defendant said at that point in his brief, however, is that "the officer did not actually restrain defendant as part of a formal arrest." Defendant acknowledged that, by yelling "Stop, police!," the officer "intended to or attempted to restrain defendant." Thus, defendant conceded that the officer intended to restrain him. But nowhere in his brief do we see a concession that the officer intended to *arrest* him.

Given a complete absence of evidence that the officer commanded defendant to stop in the course of making an arrest or pursuant to the officer's authority to arrest him, the state failed to establish all the required elements of the offense of third-degree escape. It necessarily follows that the trial court erred in denying his motion for a judgment of acquittal on that charge.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.