NELSON, J.
*716 **466 This criminal case concerns a conviction for second-degree "failure to appear," which involves the failure to appear on a misdemeanor charge after having been "released from custody" by court order, under a release agreement and upon a condition of future appearance. ORS 162.195(1)(a) ; see also ORS 162.135(4) ("[c]ustody" means "the imposition of actual or constructive restraint by a peace officer pursuant to an arrest or court order * * *"). Defendant failed to appear for a scheduled trial call, but, before that date, she had not been released following arrest, detention, or confinement. Instead, as part of a voluntary arraignment appearance, the trial court had ordered that she be conditionally released and also officially fingerprinted and photographed pursuant to a "book-and-release" process; defendant also had signed a release agreement stating that she had "been released" and agreed to personally appear at future court appearances. In response to a motion for judgment of acquittal at defendant's trial on the failure-to-appear charge, the court concluded that the previously ordered book-and-release process satisfied the statutory "custody" requirement. A jury convicted defendant, and the Court of Appeals affirmed. State v. McColly , 286 Or. App. 168, 399 P.3d 1045 (2017). We conclude that the statutes required the state to prove that, prior to defendant's failure to appear, (1) a peace officer had imposed actual or constructive restraint, pursuant to an arrest or court order, amounting to "custody"; and, then, (2) the trial court had released her from that custody, under a release agreement and upon an appearance condition. We further conclude that the state's evidence did not satisfy those requirements, and we therefore reverse defendant's judgment of conviction.[1]
I. FACTS AND PROCEDURAL BACKGROUND
We set out the facts in the light most favorable to the state. State v. Makin , 360 Or. 238, 240, 381 P.3d 799 (2016). Defendant was charged by a District Attorney's complaint with menacing and harassment, both misdemeanors. The complaint included a letter directing defendant to appear **467 in court for a scheduled arraignment, and she voluntarily appeared as directed.[2] On the same day as her arraignment, the trial court issued an order that directed defendant to complete-also on the same day-a "book-and-release" process, and it further ordered that she be conditionally "released" on her own recognizance. Also that day, defendant signed a release agreement, in which she stated her understanding that she had "been released" by the court, instead of being held in jail, because she "agree[d] to submit to all orders and process of the court"; "to personally appear at all court appearances," trial, and sentencing; and to comply with other conditions. Defendant further agreed to personally appear in court at an upcoming scheduled hearing "and all other times ordered *717 by the [c]ourt." The agreement acknowledged her understanding that violation of that or any other condition could result in revocation of release.
Defendant later appeared at a scheduled hearing, but she did not appear at a subsequent trial call. The trial court revoked her release and issued a bench warrant, and defendant was arrested. The state moved to dismiss the menacing and harassment charges-and the trial court did so-but the state filed a new charge alleging second-degree failure to appear, which proceeded to trial.
During its case in chief, the state introduced the trial court's arraignment order directing completion of the book-and-release process, as well as defendant's release agreement. The state also introduced testimony from the trial court administrator, to the effect that the book-and-release process was "the official process of being fingerprinted and [photographed] by the deputies[.]" At the close of the state's case, defendant moved for judgment of acquittal, arguing **468 that the state had failed to prove that she had been released from custody by court order before she failed to appear. ORS 162.195(1)(a). The trial court denied defendant's motion, a jury found her guilty of second-degree failure to appear, and the Court of Appeals affirmed her conviction. McColly , 288 Or. App. at 172, 177, 404 P.3d 1004. We allowed defendant's petition for review.
II. ANALYSIS
A. Statutory Provisions and Parties' Arguments
This case involves the application of two statutes. The second-degree failure-to-appear statute, ORS 162.195, makes it a crime to knowingly fail to appear
"after * * * [h]aving by court order been released from custody or a correctional facility under a release agreement or security release upon the condition that the person will subsequently appear personally in connection with a charge against the person of having committed a misdemeanor[.]"
ORS 162.195(1)(a) (emphasis added).[3] Another statute, ORS 162.135(4), defines "custody" for purposes of failure to appear as "the imposition of actual or constructive restraint by a peace officer pursuant to an arrest or court order, but does not include detention in a correctional facility[.]"[4]
The parties focus on the statutory requirement for "custody," for purposes of defendant having been "released from custody" before failing to appear. ORS 162.195(1)(a). The state argues that the trial court's arraignment order-coupled with the book-and-release process that the order directed defendant to complete-satisfied that requirement. Defendant disagrees and contends that the state did not **469 show that she had been subject to any restraint by a peace officer.[5]
In addressing those arguments, we resolve threshold statutory construction questions consistently with our familiar methodology. See State v. Gaines , 346 Or. 160, 171-72, 206 P.3d 1042 (2009) (when construing a statute to determine the legislature's intent, court examines text and context, and legislative history when appropriate). We otherwise assess whether the state presented sufficient evidence from which a reasonable trier of fact could find facts to prove each element of second-degree failure to appear, beyond a *718 reasonable doubt. State v. Rader , 348 Or. 81, 91, 228 P.3d 552 (2010) ; see also State v. Turnidge , 359 Or. 364, 455-56, 374 P.3d 853 (2016) (explaining approach when motion for judgment of acquittal frames a threshold construction dispute about a legal element).
B. "Custody" under ORS 162.135(4) and ORS 162.195(1)(a)
1. Preliminary discussion
ORS 162.135(4) sets out the following definition for "custody," for purposes of having been "released from custody" before failing to appear under ORS 162.195(1)(a) : "the imposition of actual or constructive restraint by a peace officer pursuant to an arrest or court order, but *** not includ[ing] detention in a correctional facility[.]" The parties agree about two aspects of that definition. First, they both read the text as providing that a peace officer must impose the restraint at issue-either pursuant to an arrest or pursuant to court order. Arguably, as a textual matter, that phrase could be read a different way: either a peace officer must impose the restraint pursuant to an arrest, or a court must impose the restraint by order. As explained later, however, the applicable legislative history supports the parties' shared understanding-that a peace officer must impose the restraint-and we therefore apply that reading as well. See 364 Or. at 364 Or. at 480 and n. 18, 435 P.3d at 724 and n. 18 (discussing legislative history).
**470 Second, the parties agree that this court's decision in State v. Davis , 360 Or. 201, 377 P.3d 583 (2016), provides a construction of "constructive restraint" under ORS 162.135(4) -there, in the context of an arrest. See generally State v. Mullins , 352 Or. 343, 349, 284 P.3d 1139 (2012) (case law construing statute at issue considered as part of text and context). That case involved the escape statutes, which utilize the same definition of "custody" as the failure-to-appear statutes. In Davis , two police officers had approached the defendant, whom they suspected of committing an assault, and he ran away. The police ran after him, yelling "stop, police!" but he continued to run. He later was apprehended and charged with third-degree escape. 360 Or. at 203, 377 P.3d 583.
The threshold issue in Davis was whether "constructive restraint" had been imposed on the defendant by an officer pursuant to an arrest, amounting to "custody" at the time of his alleged escape. Id. at 204, 377 P.3d 583. In resolving that issue, the court first construed "constructive restraint" as follows:
" 'Constructive' ordinarily means '[i]nferred-often used in law of an act or condition assumed from other acts or conditions which are considered by inference or by public policy as amounting to or involving the act or condition assumed.' Webster's Third New Int'l Dictionary 489 (unabridged ed. 2002); see also Black's Law Dictionary 333 (4th ed. 1968) (defining 'constructive' as '[t]hat which has not the character assigned to it in its own essential nature, but acquires such character in consequence of the way in which it is regarded by a rule or policy of law'). 'Restraint' usually refers to 'the condition of being restrained, checked, or controlled : deprivation of liberty : confinement.' Webster's at 1937."
360 Or. at 205-06, 377 P.3d 583. The court concluded that a person is subject to "constructive restraint" under ORS 162.135(4)"when an officer lawfully asserts authority to control a person's actions or freedom of movement, even if the officer does not have physical control of the person." Id. at 206, 377 P.3d 583. The court then determined that, by establishing that an officer had yelled "stop, police!" to the defendant, the state had sufficiently proved that the officer had placed the defendant in constructive restraint because the officer had "asserted **471 authority to restrict [the] defendant's freedom to move about." Id. at 209, 377 P.3d 583.[6] *719 Applying that construction here, the state was required to prove the "custody" aspect of ORS 162.195(1)(a) by showing that a peace officer had lawfully asserted his or her authority to control defendant's actions or freedom of movement, regardless of any physical control over defendant. Additionally, as applicable here, an officer imposing restraint must have done so pursuant to court order. ORS 162.135(4).
The state does not disagree that it must prove the imposition of constructive restraint by a peace officer, as described in Davis . It argues, however, that the trial court's arraignment order-once coupled with the evidence about the book-and-release process administered by deputies-satisfied that requirement. As the state describes it, the court's decision to conditionally release defendant and order completion of the book-and-release process restricted her freedom of movement until she fulfilled that condition. Given that restriction, together with the presence of deputies administering the process, defendant had been subject to constructive restraint continuing through that process. In its view, because the circumstances deriving from the arraignment order had required defendant to submit to lawful law enforcement authority to restrict her freedom of movement, she had been "released from custody," ORS 162.195(1)(a), before she failed to appear.
We turn to additional aspects of the text, as well as the applicable context and the legislative history of the failure-to-appear statutes, to determine whether the legislature intended those provisions to operate as the state contends. As explained, we ultimately disagree with the state's construction and instead conclude that the statutes require proof that, prior to a defendant's failure to appear, (1) a **472 peace officer had imposed actual or constructive restraint, pursuant to an arrest or court order; and, then, (2) the court released the defendant from that custody under a release agreement and upon an appearance condition. Stated another way, under the failure-to-appear statutes, the custodial event from which a court releases a defendant must have involved the described officer action, which in turn provides the basis for the court's "release[ ]" of the defendant "from" that "custody." ORS 162.195(1)(a) ; ORS 162.135(4).
2. Text
We begin with the second-degree failure-to-appear statute, ORS 162.195(1)(a). That statute uses the term "custody" just one time, in the following way: before failing to appear, a defendant must have been "released from custody" under a release agreement and upon an appearance condition. The "custody" from which a court must have released a defendant is the "custody" defined in ORS 162.135(4).
ORS 162.135(4), in turn, requires that actual or constructive restraint be imposed "by a peace officer pursuant to *** court order[.]" (Emphasis added.) That aspect of the text cuts against the state's argument about the significance of the trial court's arraignment order in this case: although that order conceptually could be viewed as having restricted defendant's movement, Davis , 360 Or. at 206, 377 P.3d 583, the statutory wording requires that a peace officer-not the court-impose the restraint that qualifies as custody under ORS 162.195(1)(a), from which a court then must release the defendant. See Webster's at 307 ("by" means, among other things, "through the direct agency of"[7] ).
Additionally, the wording "pursuant to" in ORS 162.135(4) means "in the course of carrying out" or "in conformance to or agreement with." Davis , 360 Or. at 206, 377 P.3d 583 (construing same statute, quoting Webster's at 1848). That is, to qualify as having been released from "custody" under ORS 162.195(1)(a) by imposition of constructive restraint, a peace officer must have imposed restraint in the course of carrying out an arrest or court order, or must act in conformance **473 to, or in agreement with, a court order. See also Davis , 360 Or. at 205-06, 377 P.3d 583 (a defendant is subject to constructive restraint when an officer lawfully asserts authority to control the defendant's actions or freedom of movement). Under that textual *720 reading of the statutes, the state's focus on the arraignment order as creating circumstances that imposed restraint amounting to "custody" appears misplaced.
3. Context and legislative history
To support its construction of "custody," the state cites, among other things, several current statutory provisions governing pretrial release. We agree that the pretrial release statutory scheme provides some context for our reading of the failure-to-appear statutes. See State v. Klein , 352 Or. 302, 309, 283 P.3d 350 (2012) (context includes related statutes). Notably, though, the specific provisions that the state cites were enacted after most aspects of the failure-to-appear statutes, including the definition of "custody" set out in ORS 162.135(4). See Stull v. Hoke , 326 Or. 72, 79-80, 948 P.2d 722 (1997) (court does not consider, as context, other related statutes that did not exist when the statutory wording at issue was enacted). The statutory schemes have evolved together over time, however, and we therefore think it useful to examine the collective history of both schemes.
a. Pre-1965 framework
Before 1965, the opportunity for pretrial release was limited to defendants who posted bail or made certain deposits of money. See former ORS 140.010 - 140.990 (1963)[8] ; OCLA §§ 26-1601 - 26-1642 (1940). The court made a decision about bail at arraignment, typically after a defendant was arrested, but the defendant also could appear voluntarily or, alternatively, already may have been "in custody." Former ORS 135.120 - ORS 135.150 (1963), repealed by Or. Laws 1973, ch. 836, § 358. For most crimes, a defendant was entitled as a matter of right to "admission to bail," former ORS 140.030 (1963), defined as a court order of "discharge[ ] from actual custody upon bail," former ORS 140.010(1) (1963) (emphasis **474 added); see also generally Knutson v. Cupp , 287 Or. 489, 492-93, 601 P.2d 129 (1979) (setting out similar wording from Deady Code (1845-1864)). The bail statutes prescribed that, if not admitted to bail-i.e. , if not discharged from "actual custody" upon bail-then a defendant must be confined before trial. See generally former ORS 140.160 (1963) (form of order for discharge upon allowance of bail directed sheriff to discharge a defendant in sheriff's custody). Read in context, the term "discharge" in the original bail statutes thus described the concept of "custody" in terms of a defendant's required confinement before trial, if not admitted to bail.[9]
b. 1965 Recognizance release framework and failure to appear
In 1965, the legislature created an additional avenue for pretrial release: release on one's own recognizance. Or. Laws 1965, ch. 447, §§ 1-7. That enactment, codified as former ORS 140.710 to 140.750 (1965) within the bail chapter, granted courts discretion to release certain defendants-those who otherwise could have been "release[d] * * * from custody" on bail-on their own recognizance, so long as it appeared to the court that they later would appear as ordered. Former ORS 140.720 (1965). In enacting that new scheme, the legislature established a connection to the existing bail statutes-which previously had provided the only means for "discharge," or release, from "actual custody," i.e. , a defendant's required confinement before trial. See former ORS 140.710 (1965) (although no person may be denied bail due to inability to pay, unlike admission to bail, no person has the right to "be released" on his or her own recognizance); former ORS 140.720 (1965) (any judge "who could release a defendant from custody upon * * * giving bail" may order own-recognizance release instead); former ORS 140.740 (1965) (court retained discretion to "commit[ ]" the defendant to "actual custody" or "return" the defendant "to custody" following revocation of release). It follows that the 1965 pretrial release provisions-as with the foundational bail statutes-referred to "custody" in terms of required **475 confinement before trial *721 (if no discharge upon bail or release on one's own recognizance).
As part of that same 1965 enactment, the legislature created the first failure-to-appear statute. Or. Laws 1965, ch. 447, §§ 8-9. Then codified as former ORS 162.450 (1965),[10] that statute provided that a defendant who "is released" on his or her own recognizance or, in some circumstances, was discharged upon bail, who later willfully failed to appear "as agreed or as ordered by the court," would be guilty of either a misdemeanor or a felony, depending on the underlying charge. The original failure-to-appear statute did not include the words "custody" or "released from custody"-rather, it stated that any defendant who willfully failed to appear as just described was guilty of either a felony or a misdemeanor.[11] But, in light of its genesis in the new release-on-own-recognizance scheme, the new failure-to appear-statute logically applied to defendants who had been released from, or avoided, pretrial confinement-through the court's act of discharging or releasing them from "actual custody" or "custody" under the bail and release-on-own-recognizance schemes-and who then later failed to appear. The new statute did not, by contrast, appear to apply to defendants who had been subject to some other type of restraint imposed by a peace officer pursuant to court order-such as a court-ordered book-and-release process administered by deputies.
**476 c. 1969 Citation framework
In 1969, the legislature created a "citation" exception to the approach of confining defendants before trial unless being admitted to bail or released on one's own recognizance. Or. Laws 1969, ch. 244. That enactment, now codified at ORS 133.055 to 133.076, applied to persons arrested on misdemeanor or certain felony charges without warrant or in other circumstances. Or. Laws 1969, ch. 244, § 1; see also ORS 133.055(1) (current version; requires that a peace officer has probable cause to believe that a person has committed a misdemeanor or certain felonies). Under the original enactment, "in lieu of taking the person into custody," a peace officer could issue and serve a criminal citation for later court appearance, and nonappearance was punishable as a new crime, failure to appear on a citation. Or. Laws 1969, ch. 244, § 2; see also ORS 133.055(1) (current version; officer may issue a criminal citation if the described circumstances exist); Or. Laws 1969, ch. 244, § 9 (describing original crime of failure to appear on a citation); ORS 133.076 (current version). In the context of the 1969 citation statutes-specifically, the phrasing "in lieu of taking the person into custody"-the term "custody" is logically understood as the officer's act of arresting a defendant, followed by an initial court appearance at which a court must decide the appropriateness of pretrial confinement, bail, or own-recognizance release. That wording also shows a legislative intention that, unless a charge was made by citation, a defendant would be confined in "custody" before trial, if not admitted to bail or released on his or her own recognizance.
d. 1971 Criminal Code revision-failure-to-appear amendment and new definition of "custody"
In 1971, as part of revising the Oregon Criminal Code, the legislature amended the *722 failure-to-appear statute, renaming the crime as first- and second-degree "bail jumping," and renumbering it as ORS 162.195 to 162.205. Or. Laws 1971, ch. 743, §§ 195-96. That amendment removed the earlier requirement that a defendant must have failed to appear "as agreed or as ordered by the court," former ORS 162.450 (1965), replacing it with a new requirement that the defendant had been released "upon the condition **477 that he [or she] will subsequently appear personally in connection with a charge" and then intentionally failed to appear. Id. The Criminal Law Revision Commission, which had made recommendations to the legislature regarding the 1971 revision, explained that "[t]he aim of [the bail-jumping statutes] is to punish persons who intentionally fail to appear in response to a criminal action lodged against them after having been released on bail or their own recognizance." Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report §§ 195-196, 197 (July 1970).[12]
Notably for our purposes, the amended failure-to-appear statutes described a defendant as "having by court order been released from custody or a correctional facility upon bail or [the defendant's] own recognizance," upon the condition of subsequent personal appearance, before failing to appear. Or. Laws 1971, ch. 743, §§ 195-196 (emphasis added).[13] As already explained, before 1971, the failure-to-appear statute simply referred to a defendant who "is released" on his or her own recognizance, or on bail, former ORS 162.450(1) (1965). And, that former wording had been based on the concepts of discharge or release from custody encompassed in the bail and release-on-own-recognizance schemes, which in turn had referred to a defendant's required confinement before trial (if no bail or own-recognizance release). On its face, the amended 1971 failure-to-appear wording-"released from custody or a correctional facility"-could be viewed as continuing those earlier concepts: "released from **478 custody" could be understood as referring to a defendant not previously confined who the court released on bail or own recognizance, and then "released from *** a correctional facility" could be understood as referring to a previously confined defendant who the court released pretrial on bail or own recognizance.[14] That reading is supported by accompanying Commentary stating that the 1971 amendment to the failure-to-appear statutes was intended to "restate the existing [failure-to-appear] law" and also would not affect then-existing statutes pertaining to bail, own-recognizance release, and citations "in lieu of bail." Commentary (1970) §§ 195-196 at 198.
Notwithstanding that pronouncement, though, the legislature in 1971 also enacted the definition of "custody" that now appears in ORS 162.135(4), which does appear to have affected the meaning of the failure-to-appear statutes. See Or. Laws 1971, ch. 743, § 189(3) (custody means "the imposition of actual or constructive restraint by a peace officer pursuant to an arrest or court order, but *** not includ[ing] detention in a correctional facility ***"). That new definition applied to the crimes of escape as well as failure to appear-indeed, the definition logically fits together with 1971 changes to the escape statutes, which focused on "escap[e]
*723 from custody."[15] As for failure to appear, as explained below, the new definition of "custody" appears to have broadened the circumstances giving rise to the crime of failure-to-appear, but also required that a threshold action be undertaken by a peace officer.
Through the new definition of "custody," the circumstances of the crime of failure-to-appear were expanded to include the imposition of actual or constructive restraint by **479 a peace officer, pursuant to either an arrest or a court order. See Commentary (1970) § 189 at 193 (custody "intended to apply to custodial situations other than correctional facility confinement, i.e. , while the actor is under actual or constructive restraint but not yet committed to a correctional facility");[16] see also Criminal Law Revision Commission, Subcommittee No. 1, Art. 23, Preliminary Draft No. 2, 3 (Oct. 1969) (custody "includes a continuing constructive restraint").Cf. former ORS 140.010(1) (1963) (admission to bail defined as discharge "from actual custody upon bail"). In drafting that wording, the Commission had evaluated definitions from New York and Michigan referring to "restraint " by a public servant "pursuant to an authorized arrest or an order of a court[,]" New York Revised Penal Law § 205.00(2) (1969), and "detention " by a public servant "pursuant to an arrest, conviction or a contempt citation[,]" Michigan Revised Criminal Code § 4601(2) (1969) (emphases added). See Criminal Law Revision Commission, Subcommittee No. 1, Art. 23, Preliminary Draft No. 3 at 8-9 (setting out those definitions); Commentary (1970) § 189 at 193 (identifying those laws as drafting sources, "with substantial alteration"). Ultimately, though, the Commission recommended the expanded phrasing that the legislature adopted.
The contrast between those underlying sources of law and the enacted Oregon definition show deliberate choices about the intended scope of "restraint" amounting to "custody," for purposes of having been "released from custody" before failing to appear. First, the Oregon statute expressly encompassed any restraint, whether actual or constructive. See generally Davis , 360 Or. at 209, 377 P.3d 583 (citing 1970 Commentary and concluding that, under the "constructive restraint" and "pursuant to arrest" wording in ORS 162.135(4), formal **480 arrest was not required). Second, the Oregon statute did not limit "custody" to circumstances of "detention." Third, the Oregon statute expanded beyond a restraint imposed pursuant to an arrest-which was the typical way to bring a defendant before the court for arraignment under the pre-existing bail and release-on-own-recognizance statutory schemes, absent voluntary appearance-by also encompassing actual or constructive restraint imposed pursuant to court order. In concept, that deliberate expansion generally supports the notion that the book-and-release process itself might have qualified as "custody" because it arguably involved the imposition of constructive restraint by a peace officer pursuant to court order.[17]
But the 1971 definition of "custody" also imposed a threshold limit on the imposition of restraint, by requiring that it be imposed *724 "by a peace officer." See Commentary (1970) § 189 at 193 (explaining that a peace officer must impose the restraint, whether pursuant to arrest or court order).[18] In explaining that aspect of the definition, a subcommittee of the Commission discussed a development in New York's penal law, in which that state's legislative assembly had amended its bail-jumping statutory framework to clarify that the court's role is to impose appearance conditions and release the defendant from custody, prior to the defendant's failure to appear. By contrast, the peace officer's role is to impose the restraint that amounted to custody. Criminal Law Revision Commission, Subcommittee No. 1, Art. 23, Preliminary Draft No. 2 at 31-32 (citing 1968 New York practice commentary).[19] **481 In sum, through the 1971 amendment to the failure-to-appear statutes and the new companion definition of "custody," the legislature broadened the circumstances that may give rise to the crime of failure to appear, but it also required that a peace officer impose the restraint amounting to the "custody" from which a court must have released the defendant. Nothing in the legislative record clarifies how those enactments were intended to fit together with the pre-existing bail and release-on-own-recognizance statutory schemes that had incorporated a more traditional concept of "custody." Stated differently, although the crime of failure to appear had been intended since 1965 to serve as a consequence for violating an agreed-to condition for discharge upon bail or release on one's own recognizance, the updated notion of "custody" in 1971 introduced new concepts that the legislature had not contemplated when it enacted the release-on-own-recognizance scheme or, for that matter, the original failure-to-appear statute.
e. 1973 Criminal Procedure Code revision-pretrial release framework and failure to appear amendments
In 1973, as part of a revision to the Oregon Criminal Procedure Code (again based on Commission recommendations), the legislature enacted a new pretrial release statutory framework that, among other things, repealed the bail and release-on-own-recognizance statutes summarized above. Or. Laws 1973, ch. 836, §§ 146-157, 358. That legislation made conforming changes to the failure-to-appear statutes-replacing references to release on bail or one's own recognizance with release "upon a release agreement or security release"-and it also replaced the **482 1971 "bail jumping" wording with "failure to appear." Id. at §§ 343-344.[20] Otherwise, though, the legislation retained the "released *725 from custody" requirement in the failure-to-appear statutes, and it made no change to the companion definition of "custody" set out in ORS 162.135(4).
The new pretrial release framework created for most crimes a presumption of personal recognizance release. Or. Laws 1973, ch. 836, §§ 149, 152-153; Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Procedure Code, Final Draft and Report (Nov. 1972) § 237, 134; see also Knutson , 287 Or. at 493, 601 P.2d 129 (1973 legislation "substituted for the traditional 'bail' a new framework for release of defendants[,]" now upon personal recognizance, conditional release, or security release). The court was required to make a "release decision" for any defendant "in custody" at arraignment, Or. Laws 1973, ch. 836, § 149, although the new framework continued to acknowledge that a defendant could appear voluntarily at arraignment, id. at 133; see also ORS 135.035 (current codification; same). The new framework defined "[r]elease" as the "temporary or partial freedom of a defendant from lawful custody" before judgment of conviction (or post-conviction release pending appeal). Or. Laws 1973, ch. 836 § 146(4); ORS 135.230(8). It did not define "custody," however, and it neither expressly incorporated nor cross-referenced the pre-existing definition of "custody" that applied to the failure-to-appear statutes, e.g. , the imposition of actual or constructive restraint by a peace officer pursuant to an arrest or court order. Instead, the concept of "release" throughout the pretrial release enactment presumed that a defendant first be in "lawful custody" of some sort. For the most part, that concept of "custody" continued the notion of "actual custody" from the original bail and release-on-own-recognizance statutes. See Or. Laws **483 1973, ch. 836, § 149(1), (3) (now codified at ORS 135.245(1), (3) ) (person "in custody" has right to be taken to magistrate without undue delay or right to immediate security release; depending on crime, person otherwise has right to release).
However, one aspect of the 1973 pretrial release framework-a new "release agreement" statute-did expressly cross-reference the failure-to-appear statutes and incorporate the wording "released from custody." That new statute provided:
"(1) The defendant shall not be released from custody unless [the defendant] files with the clerk of the court *** a release agreement duly executed by the defendant containing the conditions ordered by the releasing magistrate [or, alternatively, deposits required security].
"(2) A failure to appear as required by the release agreement shall be punishable as provided in ORS 162.195 or 162.205 [ (the failure-to-appear statutes) ].
"(3) 'Custody' for purposes of a release agreement does not include temporary custody under the citation procedures of ORS [133.055 to 133.076]."
Or Laws 1973, ch. 836, § 151 (now codified at ORS 135.255 ) (emphasis added). We discuss subsections (1) and (2) further below; as explained, they do not alter our assessment of what is required to prove that a defendant had been "released from custody" for purposes of failure to appear.[21]
Subsection (1) of the release agreement statute, ORS 135.255, requires that a defendant, as a predicate to being "released from custody," execute and file a release agreement. One arguably could equate that wording with the pre-existing "released from custody" requirement in the failure-to-appear statutes, as follows: by releasing a defendant **484 under a release agreement, a court could be said to have released that defendant from "custody" for purposes of the failure-to-appear statutes. But that reading would rely on a 1973 enactment to construe a 1971 enactment. See Stull , 326 Or. at 79-80, 948 P.2d 722 (context does not include statutory wording enacted after the wording at issue). And *726 more problematically, it avoids engaging with the 1971 definition of "custody" set out in ORS 162.135(4) -the imposition of actual or constructive restraint by a peace officer pursuant to an arrest or court order-which is required to prove that a defendant had been "released from custody" by a court before failing to appear, ORS 162.195(1)(a).
Subsection (2) of the release agreement statute, ORS 135.255, expressly cross-references the failure-to-appear statutes, stating that failure to appear in compliance with an appearance condition in a release agreement "shall be punishable as provided in" those statutes. As a textual matter, that subsection could be read to suggest that any failure to appear-following execution of a release agreement that includes an appearance condition-automatically satisfies the requirement in the failure-to-appear statutes that a defendant previously had been "released from custody *** under a release agreement ***." ORS 162.195(1)(a). See generally Commentary (1972) § 242 at 141 (failure to comply with an appearance condition under the release agreement statute will "constitute[ ]" the crime of failure to appear). But, again, such a reading does not take into account the 1971 definition of "custody" that applies to the failure-to-appear statutes. Stated another way, that reading would relieve the state of its burden under the failure-to-appear statutes to prove that a peace officer had imposed actual or constructive restraint pursuant to an arrest or court order.
To give effect to both statutory schemes, we read the later-enacted release agreement statute, ORS 135.255, as follows. First, subsection (1) requires the execution of a release agreement before a defendant is "released" from "custody" for purposes of the pretrial release framework. Second, subsection (2) expresses a legislative intent that, if a defendant fails to appear pursuant to an appearance condition in a release agreement, then prosecution for failure to **485 appear should follow. Finally, we read the cross-reference in subsection (2) to the failure-to appear statutes to also cross-reference-by extension-the pre-existing definition of "custody" set out in ORS 162.135(4). That is, by providing that failure to appear in violation of a release agreement condition is punishable "as provided in" the failure-to-appear statutes, subsection (2) of ORS 135.255 refers to all aspects of the failure-to-appear statutes, including proof of restraint imposed by a peace officer as required in ORS 162.135(4), amounting to "custody." See ORS 162.135 (definition of "custody" applies "[a]s used in" the failure-to-appear statutes, ORS 162.195 - 162.205 ); see generally State v. Branch , 362 Or. 351, 360-61, 408 P.3d 1035 (2018) (if possible, court gives enactment with multiple parts a construction that will give effect to all parts); Unger v. Rosenblum , 362 Or. 210, 221, 407 P.3d 817 (2017) (court considers relevant statutes together, so that they may interpreted "as a coherent, workable whole"). In short, we acknowledge that the legislature intended a failure-to-appear prosecution to serve as a consequence for failing to comply with an appearance condition in a release agreement. But, to prove the crime of failure-to-appear, the state must prove that the defendant had been in "custody" under ORS 162.135(4) and then had been released from that custody by court order.
f. Summary
We summarize the collective statutory context and legislative history, together with the current text of ORS 162.195(1)(a) and ORS 162.135(4), as follows. Before 1971, the notion of "custody" in the bail and release-on-own-recognizance schemes that had provided a basis for the crime of failure to appear generally spoke of "custody" in terms of the requirement of confinement before trial. The 1971 definition of "custody," together with other 1971 amendments, then effected the following changes to the crime of failure to appear: (1) the circumstances from which a defendant could have been released from custody before failing to appear were expanded to incorporate actual or constructive restraint imposed pursuant to an arrest or court order; but (2) a peace officer must have imposed that restraint; and (3) a court then must have released the defendant from **486 that custody upon an appearance condition. In 1973, the legislature clarified its intention that the violation of an appearance condition contained in a release agreement should result in prosecution for failure to *727 appear, but the failure-to-appear statutes continued to uniquely require proof of "custody," as defined in ORS 162.135(4), to satisfy the "released from custody" requirement in ORS 162.195 (1)(a).
4. Application
Returning to this case, the facts do not fit within that contemplated framework for the crime of failure to appear. Defendant appeared voluntarily before the trial court, absent the imposition of any restraint by a peace officer pursuant to an arrest or court order under ORS 162.135(4). The court decided to conditionally release her pursuant to a release agreement that contained an appearance condition-but again without any restraint having been imposed on her by a peace officer. Viewed in terms of defendant's motion for judgment of acquittal based on the statutory requirement for "custody," the state did not prove that defendant had been "released from custody" before she failed to appear, ORS 162.195(1)(a), because it did not prove that the trial court's arraignment order had released defendant from the restraint required under ORS 162.135(4). Stated another way, even assuming that the court-ordered book-and-release process ultimately might have involved constructive restraint amounting to "custody," the court's arraignment order could not have released defendant from that custody when the purported custodial event-the book-and-release process-had not yet occurred.[22]
The state argues that the collective statutory and legislative history shows the intended "expansive scope" of the crime of failure to appear, supporting its theory that **487 it may prove "custody" by establishing circumstances that amounted to constructive restraint-here, deriving from the trial court's arraignment order that directed completion of the book-and-release process administered by deputies. As explained above, we agree that the history in some respects shows an intended expansive scope, but we disagree with the state's proposed construction. Since 1971, ORS 162.135(4) has required the state to prove that a peace officer imposed actual or constructive restraint on a defendant, pursuant to arrest or court order, amounting to custody. Only then is a court able to release the defendant from that custody under a release agreement containing an appearance condition. Proof of circumstances created by the court's arraignment order-even if those circumstances might have included a direction that peace officers subsequently impose constructive restraint-does not satisfy the statutory requirement that, prior to defendant's failure to appear, the court had released her from a restraint already imposed.
We emphasize that the trial court was not without tools to address defendant's nonappearance in this case. As explained earlier, defendant's release agreement provided that a violation of any condition could result in revocation of her release, and the court accordingly revoked her release following her failure to appear. And, as the legislature contemplated, the court issued a bench warrant to arrest defendant. See generally Or. Laws 1973, ch. 836, § 1(2) (defining bench warrant); ORS 131.005(2) (same) ; Commentary (1972) § 1 at 2 (bench warrant defined as distinct and serving a different purpose from a "warrant of arrest" on initial charges). The court also could have opted at the outset to direct a peace officer to impose an actual or constructive restraint on defendant amounting to "custody" under ORS 162.135(4), as appropriate; then, the court could have released her from that custody under a release agreement and upon an appearance condition, which in turn could have provided the basis for a failure-to-appear prosecution.[23] But the requirements for failure *728 to appear were not satisfied when the event purportedly amounting to "custody"-a **488 book-and-release process that may have imposed actual or constructive restraint by a peace officer pursuant to court order-had not yet occurred when the court ordered defendant's release.[24] Stated another way, the state did not present sufficient evidence to permit a reasonable trier of fact to have found that defendant had been "released from custody" by court order, ORS 162.195(1)(a) ; ORS 162.135(4), before she failed to appear.
III. CONCLUSION
To establish that defendant had been "released from custody" for purposes of second-degree failure to appear, ORS 162.195(1)(a), the state was required to prove (1) the imposition of actual or constructive restraint by a peace officer, pursuant to an arrest or court order, amounting to "custody," ORS 162.135(4) ; and, then, (2) that defendant had been released from that custody, by court order, under a release agreement and upon an appearance condition. The state proved that the trial court issued an arraignment order that released defendant and directed that she complete a book-and-release process. But the state did not prove that defendant had been "released from custody," because it did not prove that a peace officer had imposed actual or constructive restraint amounting to custody, from which the court then released defendant. The trial court therefore erred in denying defendant's motion for judgment of acquittal.
The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

Defendant raises a second assignment of error that we need not address, in light of our decision that her judgment of conviction must be reversed.

See ORS 131.005(3) (district attorney-filed complaint that charges a defendant with committing a nonfelony offense serves both to commence an action and as a basis for prosecution); State v. Kuznetsov , 345 Or. 479, 487-88, 199 P.3d 311 (2008) (a complaint serves the same function as an information).
The record in this case is limited to the register of actions and case file documents, together with the trial transcript and exhibits, relating to defendant's failure-to-appear prosecution. We take judicial notice, however, of the register and case file documents in the underlying misdemeanor prosecution, which included the charging complaint and appearance letter. See OEC 201(b)(2) (court may take judicial notice of facts generally known within court's jurisdiction or those capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned).

Second-degree failure to appear is a Class A misdemeanor. ORS 162.195(2). First-degree failure to appear, ORS 162.205, applies to failure to appear in connection with a felony charge. The operative wording of the two statutes is otherwise the same.

"Peace officer" is defined in ORS 161.015(4). Here, there is no dispute that any deputy authorized to administer the court-ordered book-and-release process qualified as a "peace officer."
"Correctional facility" is defined in ORS 162.135(2) as "any place used for the confinement of persons charged with or convicted of a crime or otherwise confined under a court order ***."

There is no disagreement that, before her arraignment, defendant never had been subject to any restraint by a peace officer-either at the time of the incident giving rise to the misdemeanor charges or in connection with the District Attorney's complaint on those charges. Rather, the dispute focuses on implications arising from the trial court's arraignment order.

The court in Davis further determined, however, that the state had not sufficiently proved a separate requirement to establish "custody" that is not at issue here: that the defendant had been placed in constructive restraint "pursuant to an arrest." ORS 162.135(4) ; see 360 Or. at 209-10, 377 P.3d 583 (evidence did not show that officer had acted "pursuant to an arrest"). The court therefore reversed the defendant's conviction. Id. at 209-10, 377 P.3d 583.

Examples of that definition of "by" in Webster's include "put to death [by] the executioner" and "ordered [by] the captain to stand guard."Webster's at 307.

Former ORS chapter 140 was repealed and replaced with new provisions in 1973. Or. Laws 1973, ch. 836, § 358.

Admission to bail also extended to defendants post-judgment, during pendency of appeal, but that scenario is not at issue here. Former ORS 140.030 (1963).

Renumbered as ORS 162.195 - 162.205, Or. Laws 1971, ch. 743, §§ 195-196.

Former ORS 162.450 (1965), renumbered as ORS 162.195 - 162.205 (1971), provided:
"(1) Any person who is charged with the commission of a felony who is released on his own recognizance pursuant to [former ] ORS 140.710 to 140.750 [ (1965) ] or who, having furnished bail or undertaking, wilfully fails to appear as agreed or as ordered by the court shall be punished upon conviction by imprisonment in the state penitentiary for not more than two years or by imprisonment in the county jail for not more than one year or by a fine not exceeding $100.
"(2) Any person who is charged with the commission of a misdemeanor who is released on his own recognizance pursuant to [former ] ORS 140.710 to 140.750 [ (1965) ] who wilfully fails to appear as agreed or as ordered by the court is guilty of a misdemeanor."
As can be seen, the felony provision included within its scope any defendant previously charged with a felony who had furnished bail or undertaking and then later willfully failed to appear as agreed or ordered, but the misdemeanor provision did not include that wording. The legislature closed that gap in 1971. See 364 Or. at 477 n. 12 (so explaining).

See also Criminal Law Revision Commission, Subcommittee No. 1, Art. 23, Preliminary Draft No. 3, 30 (Jan. 1970) (noting national trend, to deter nonappearance, toward adopting nonfinancial sanctions as opposed to those ordinarily imposed in connection with bail default).
The 1971 amendment to the failure-to-appear statutes adopted identical wording for both the felony and misdemeanor provisions, closing the earlier gap that did not cover a defendant who had been charged with a misdemeanor and then had furnished bail or undertaking. Or. Laws 1971, ch. 743, §§ 195-96. Much later, in 2003, the legislature changed the requisite mental state from intentional to knowing. Or. Laws 2003, ch. 320, § 1.

The "released from custody" wording was drawn from bail-jumping statutes from New York and Michigan. See Commentary (1970) §§ 195-96 at 197 (noting origin); Criminal Law Revision Commission, Subcommittee No. 1, Art. 23, Preliminary Draft No. 3 at 34-35 (setting out text of New York Revised Penal Law, § 215.56-215.57, and Michigan Revised Criminal Code, §§ 4620 - 4621).

"[R]eleased from *** a correctional facility," Or. Laws 1971, ch. 743, §§ 195-196, also could refer to a defendant released from confinement pending appeal.

Stated another way, the legislature sought to clarify that a person would qualify as having escaped from custody if he or she escaped from an actual or constructive restraint imposed by a peace officer pursuant to arrest or court order. Or. Laws 1971, ch. 743, §§ 190-192; see also Davis , 360 Or. at 208-09, 377 P.3d 583 (describing legislative history of the 1971 escape amendments in connection with the new definition of "custody," specifically focusing on "arrest"). (Under the 1971 Criminal Code revision, third-degree escape simply required "escape[ ] from custody"; then, second- and first-degree escape required additional elements. Or. Laws 1971, ch. 743, §§ 190-192.)

The legislature appears to have expressly excluded detention in a correctional facility from the definition of custody because the amended failure-to-appear statutes expressly stated that a defendant must have been "released from custody or a correctional facility" (emphasis added) (and, the amended escape statutes referred to escape from custody or a correctional facility). Or. Laws 1971, ch. 743, §§ 195-196; id. at §§ 190-192. Stated differently, the 1971 amendment to the failure-to-appear statutes continued to include prior release from a correctional facility within its scope, but it did so by identifying that circumstance as different from being "released from custody."

As noted later, we need not, and do not, decide in this case whether the book-and-release process in fact qualified as a constructive restraint amounting to custody.

The Commentary, as well as commentary accompanying earlier drafts, explained that "custody" meant "the imposition of actual or constructive restraint by a peace officer pursuant to either (a) an arrest, or (b) a court order." Commentary (1970) § 189 at 193; see also Davis , 360 Or. at 209, 377 P.3d 583 (citing same, when exploring contours of "arrest"); Criminal Law Revision Commission, Subcommittee No. 1, Art. 23, Preliminary Draft No. 3, 3 (same explanation of "custody" as in the final Commentary).

The subcommittee specifically discussed the 1968 New York penal law revision. Before 1968, that state's bail-jumping statute had not required that a defendant's earlier release have been by court order. A concern then arose whether that statute could encompass the failure to appear following an officer's issuance of an "appearance ticket," which occurred without court order. The prevailing view was that bail-jumping should not encompass failure to appear on a ticket, but, because the pre-1968 bail-jumping statute did not require the defendant's release to be by court order, a defendant who received a ticket could be viewed as having been "release[d] from custody"-with the officer's ticket issuance serving as the custodial event. To eliminate that possible construction, the 1968 New York revision amended the bail-jumping statute to confine that crime "to defiance of court mandates only[,]" and then enacted a separate, new offense of failing to respond to an appearance ticket (similar to Oregon's citation scheme). Criminal Law Revision Commission, Subcommittee No. 1, Art. 23, Preliminary Draft No. 2 at 31-32

New procedures for "security release" set out in the 1973 pretrial release framework replaced the old procedures for bail. See State ex rel. Lowrey v. Merryman , 296 Or. 254, 256 n. 2, 674 P.2d 1173 (1984) (so explaining).
As noted, the 1973 amendment to the failure-to-appear statutes referred to release from custody "upon a release agreement or security release." Or. Laws 1973, ch. 836, §§ 343-344 (emphasis added). In 2001, as part of restructuring the statutes to add a provision about forced release agreements, the legislature changed the wording "upon" to "under," e.g. , "under a release agreement or security release." Or. Laws 2001, ch. 517, §§ 3-4.

Subsection (3) of ORS 135.255 refers to the citation statutes, ORS 133.055 -133.076, which in their current form permit a peace officer to issue a criminal citation upon probable cause to believe that a person has committed either a misdemeanor or certain felonies. The citation statutes do not use the term "temporary custody," but, read in context, that term appears to refer to the act of an officer issuing a citation. As noted earlier, the citation statutes include a separate failure-to-appear provision, ORS 133.076. Subsection (3) of ORS 135.255 thus operates to clarify that neither subsection (1) nor (2) apply to the citation procedures.

We do not in this case decide whether the book-and-release process itself qualified as "actual or constructive restraint imposed by a peace officer pursuant to *** court order[.]" ORS 162.135(4). The record included scant evidence about the nature of that process or whether it may have satisfied the legislature's 1971 expanded definition that included "actual or constructive" restraint not limited to detention or arrest. In any event, we need not decide that issue, in light of our decision that the trial court's arraignment order could not have "released" defendant from "custody" that had not yet occurred.

We need not-and do not-decide the precise process steps that would satisfy the statutory requirements, when a defendant voluntarily appears for arraignment.

We understand the trial court's arraignment order to have "released" defendant immediately, at the time when she was in the courtroom for arraignment.